JAMES ROBERTS *vs.* FRANK'S INC.

Suffolk.    January 4, 1943. — May 25, 1943.

Present: FIELD, C.J., DONAHUE, LUMMUS, DOLAN, & COX, JJ.

*Negligence*, Employer's liability: appliance, assumption of risk. *Proximate Cause.*

Evidence warranted findings that an employer, not a subscriber under the workmen's compensation act, was negligent with respect to an oil burner on his premises, the switch to which was turned on when the burner was so out of order that the oil vapor did not ignite during operation and the unburned oil vapor, prevented from escaping up the chimney by an accumulation of soot, exploded from the heat or flame of another burner in operation and injured an employee; and that the employer's negligence was the proximate cause of such injuries.

It could not properly have been ruled that an employee of one not a subscriber under the workmen's compensation act "contractually" assumed the risk of injury resulting from an explosion in an oil burner on the employer's premises where the conditions leading to the explosion arose after his employment began.

TORT. Writ in the Municipal Court of the City of Boston dated April 12, 1940.

Upon removal to the Superior Court, the action was tried before *Swift*, J.

*E. M. Dangel*, (*L. E. Sherry & S. Marshall* with him,) for the defendant.

*M. Michelson*, for the plaintiff.

DOLAN, J.    This is an action of tort to recover for personal injuries sustained by the plaintiff while in the employ of the defendant, which was not a subscriber under the workmen's compensation act. At the close of the evidence the defendant moved for a directed verdict in its favor. The motion was denied, subject to the defendant's exception, and the jury returned a verdict for the plaintiff.

The jury would have been warranted in finding the following facts: On November 18, 1939, the defendant was operating a garage in which the plaintiff was employed as a night watchman. He also sold gasoline and oil and parked and washed automobiles. He had been employed by the defendant for a year to a year and a half prior to the date just mentioned, and his hours of work were from 7 P.M. to 7 A.M. There were two oil burners in the cellar of the garage, "a little one and a big one." There was an individual switch for each burner in the cellar, and in the office upstairs there was a single main switch for both burners. In order to operate either burner, the individual switch thereto and the main switch in the office would have to be on. The big burner had not been in actual use since the previous winter. In that winter it worked all right when first put in operation, but toward the end of the winter it did not work well and had not been repaired. The plaintiff's "boss" told him not to use it because it had to be fixed, and he did not use it intentionally. The small burner had been in use for two weeks before the accident and also on the day of the accident. It heated the office and supplied hot water when in operation. The switch for the small burner was always on. The method of starting the small burner was to throw the switch in the office. That "was the way it was done ordinarily, everybody did it that way," and this method was in accordance with the instructions given to the plaintiff. On the morning of the day in question, when the plaintiff ceased working, the switch for the big burner was off as usual. When he returned to work in the evening the switch in the office was off and neither burner was in operation. During the course of the evening a boy who was washing trucks wanted some hot water. The plaintiff put the switch in the office on, and twenty to twenty-five minutes later he heard a noise coming from the furnace room and noticed that the door to the cellar, which led from the outside of the garage, was shaking and rattling. This door was kept locked, and in order to go into the cellar it was necessary to go outside the garage and through this door. The purpose of the switch in the office was to avoid this inconvenience.

Nobody "had access to the cellar except employees of the defendant." The plaintiff took the key to the cellar door, unlocked it and found that the motors of both burners were in operation. The small burner was ignited, but the big burner was cold and had not been ignited. This was the first time since the preceding winter that he had found the motors of both burners in operation. He stepped over to the big burner to throw off the switch, but before he could reach it an explosion came from this burner and "blew him first ten feet in one direction and then about fifteen feet to the stairway." He was covered with soot, his clothes were on fire, and he was burned on his face, hands and neck. There was soot "all over the place; in addition to the soot that was left in the flue . . . there was sufficient soot around . . . [the boiler room] to lead" the chief of the fire department "to form an opinion as to how much soot there had been in the flue and in the chimney . . . that there was considerable soot, and that is evidence of poor maintenance."

There was evidence that if the switch of the big burner was on and the switch in the office was pulled on, "that started the motor, drawing up the oil and vaporizing it into the pit and then you had to light it"; that, if the big burner was running twenty minutes and was not ignited, the burner and the smoke pipes would be filled with unused oil fumes; and that the accumulation of the vapors of oil was explosive and dangerous if ignited. There was no thermostatic or automatic control on the burner that would cause it to shut off, and the vapor would come in and stay there. There was expert testimony that the explosion was caused by the accumulation of unburned gases in the heater and smoke pipes, which were ignited by the heat or the flame of the small burner; that it would be practically impossible to say definitely what was the cause of the accumulation of gas but that an accumulation of soot in the chimney, and pipes leading to the chimney, would be an adequate cause of the igniting of the unburned gases in the burner in that it would prevent their escape through the chimney in the normal way. There was also evidence that there had been

considerable soot in the flue and in the chimney, and other evidence, hereinbefore referred to, from which the jury could find that this was due to negligence in maintenance, or mechanical defects. There was further evidence that the defendant had been in possession of the premises for a year and a half before the accident, and that during that time no soot had been cleaned out of the burner, flue or chimney. Since the defendant was not insured under the workmen's compensation act "the only question is whether there was any evidence of negligence of the defendant or . . . [its] servants or agents having causal connection with the injury to the plaintiff," *Hutchinson* v. *Sovrensky,* 267 Mass. 5, 6, and the plaintiff "is entitled to recover if he merely proves that there was negligence on the part of the defendant or . . . [its] servants or agents which caused his injury." *Greem* v. *Cohen,* 298 Mass. 439, 444, and cases cited. *Rivers* v. *Krasowski,* 303 Mass. 409, 411. *Drake* v. *Boston Safe Deposit & Trust Co.* 307 Mass. 399, 402. *Spear* v. *Chelsea Building Wrecking Co. Inc.* 308 Mass. 416, 417.

In the instant case the defendant, as an employer, owed the plaintiff a duty to use reasonable care to provide him with a safe place in which to work, and to furnish and maintain reasonably safe and proper machinery and appliances with which to perform the work he was hired to do. *Ryan* v. *Fall River Iron Works Co.* 200 Mass. 188, 192. *Neiss* v. *Burwen,* 287 Mass. 82, 89. *Novash* v. *Crompton & Knowles Loom Works,* 304 Mass. 244, 247. The jury would have been warranted in finding that the large burner was out of repair and had not been properly maintained; that the switch thereto had been put on by some agent or servant of the defendant other than the plaintiff without his knowledge; that the starting of the motor caused the accumulation of gases which were prevented from escaping by soot in the flue pipe and chimney, which had not been cleaned for a year and a half; that the accumulated vapors were ignited by the heat or the flame of the small burner; and that this condition was due to negligence in maintenance or mechanical defects. See *Souden* v. *Fore River Ship Building Co.* 223 Mass. 509. They could also have found that in throwing on

the switch in the office the plaintiff was acting in the customary way and in accordance with instructions. They were not required to believe the testimony to the contrary of the defendant's clerk. The jury could also have found that the consequences in the case at bar were foreseeable by the defendant.

It could not properly have been ruled, as contended by the defendant, that the plaintiff contractually assumed the risk of the danger arising from the conditions before set forth. The jury could find that the danger was not one that was obvious to the plaintiff at the beginning of his employment since there was evidence that the large burner had been in operation during the prior winter, that it worked all right when first put in operation, "but along towards the end of the winter it began not to work good" and had not been repaired. *Neiss* v. *Burwen*, 287 Mass. 82, 91, and cases cited. The defences of contributory negligence and voluntary assumption of risk are not open to the defendant. G. L. (Ter. Ed.) c. 152, § 66. *Novash* v. *Crompton & Knowles Loom Works*, 304 Mass. 244, 247.

The defendant's contention that the evidence as to any negligent conduct on its part does not go beyond mere conjecture cannot be sustained. As we have pointed out before, there was evidence of negligence in the maintenance of the big burner in question and of some one of the defendant's agents or employees in putting on the switch thereto, to which access could be had only by its agents and servants. While the expert testified that he could not say definitely just what ignited the fumes in the large burner, he expressed the opinion that they might have been ignited by the heat or the flame of the small burner. The plaintiff, however, was not required to exclude all other possibilities as to the cause of his injury, but was only required to show by the evidence a greater likelihood that his injuries came from an act for which the defendant was responsible than from a cause for which it was not responsible. *Rocha* v. *Alber*, 302 Mass. 155, 157, 158, and cases cited. We are of opinion that it cannot be said as matter of law that the

plaintiff has not made that proof.   *Noble* v. *Park Enterprises, Inc.* 313 Mass. 454, 458, and cases cited.

The defendant was not entitled to a directed verdict.

*Exceptions overruled.*