JEANNETTE V. LACLAIR, individually and as administratrix, *vs.* SILBERLINE MANUFACTURING CO., INC. & others.[1]

Worcester. May 10, 1979. — August 21, 1979.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, KAPLAN, WILKINS, LIACOS, & ABRAMS, JJ.

*Negligence*, Failure to obtain workmen's compensation coverage, Powder explosion, Employer, Manufacturer, Proximate cause. *Corporation*, Officers and agents.

In an action against a corporate president for failure to carry or provide workmen's compensation insurance, thereby depriving the plaintiff of widow's benefits under G. L. c. 152, the judge erred in directing a verdict in favor of the defendant where there was evidence that the defendant violated the provisions of G. L. c. 152 in failing to provide such coverage and that the defendant was aware of the corporation's precarious financial condition, its regular use of extremely volatile chemicals, and the plant's concededly poor safety conditions. [26-30]

In an action against a corporate president for negligence in failing to provide the plaintiff's decedent with a safe place to work, the judge did not err in directing a verdict in favor of the defendant where there was no evidence that the defendant's negligence was the proximate cause of the decedent's injuries. [30-31]

---

[1] Marian Plastics, Inc., Robert E. Lewis, Elizabeth D. Lewis, and Mary Cocuzzo.

In an action against a manufacturer of aluminum powder for negligence and breach of warranty, on the theory that the aluminum powder it manufactured and sold was the cause of an explosion which resulted in fatal injuries to the plaintiff's husband, the judge did not err in directing a verdict in favor of the defendant where there was no evidence that the aluminum powder did in fact provide the fuel for the explosion [31-32]; nor did the judge err in excluding testimony of an expert witness that the explosion was caused by the ignition of a cloud of aluminum powder where, at the time the evidence was offered, there was insufficient basis in the record for the expert's opinion as to the cause of the accident [32-33].

In an action by a plaintiff seeking to recover for her husband's conscious suffering and death resulting from an explosion at his employer's plant, the judge did not err in directing verdicts in favor of two defendants whose only connection with the accident was that one was a director and the other the clerk of the corporate employer. [33]

CIVIL ACTION commenced in the Superior Court on August 14, 1974.

The case was tried before *Beaudreau*, J.

After review was sought in the Appeals Court, the Supreme Judicial Court, on its own initiative, ordered direct appellate review.

*John M. Griffin (Walter J. Avis, Jr.*, with him) for the plaintiff.

*Alfred Sigel* for Silberline Manufacturing Co., Inc.

*John A. Bowen* for Robert E. Lewis & another.

*Lawrence R. Levinson* for Mary Cocuzzo.

HENNESSEY, C.J. On May 17, 1973, Joseph W. LaClair was severely burned when an explosion and fire occurred at the factory of his employer, Marian Plastics, Inc., of Leominster. Although he was rushed to a hospital, LaClair's injuries proved fatal and he died nine days later. Seeking recovery for her husband's conscious suffering and wrongful death, the plaintiff, Jeannette V. LaClair, brought these actions both individually and as administratrix of LaClair's estate.

As amended, the complaint alleges that LaClair's injuries and death were attributable to the Silberline Manufacturing Co.'s negligent sale and defective manufacture of alu-

minum powder, the latter act being in breach of express and implied warranties under the Uniform Commercial Code, G. L. c. 106, §§ 2-314 - 2-318. It is further alleged that La-Clair's injuries and death were caused by the negligent acts and omissions of Marian Plastics, Inc., Robert E. Lewis, Elizabeth D. Lewis, and Mary Cocuzzo, and that these individual defendants, who were officers or directors of Marian Plastics, failed to carry or provide workmen's compensation insurance, thereby depriving the plaintiff of widow's benefits under G. L. c. 152.

The case was tried to a jury, and at the close of the evidence the judge allowed motions for directed verdicts against the plaintiff and in favor of all the defendants except Marian Plastics.[2] Jeannette LaClair appeals the allowance of these motions and subsequent entry of judgment. We transferred the case to this court on our own motion.

It is our opinion that all of the directed verdict motions, except one, were correctly allowed. For the reasons discussed below, we believe that the judge erred in directing a verdict against the plaintiff and in favor of Robert E. Lewis. The evidence presented at trial, we conclude, was sufficient for a jury to find Robert E. Lewis liable in negligence for his failure to obtain workmen's compensation coverage. Accordingly, we remand this cause of action to the Superior Court for retrial.

We summarize those facts most favorable to the plaintiff. See *Everett* v. *Bucky Warren, Inc.*, 376 Mass. 280, 282 (1978), and cases cited. For approximately seventeen years Joseph LaClair was employed by Marian Plastics, Inc., a small company in the business of manufacturing and coloring plastics to the specifications of its customers. At the time of his death LaClair was the supervisor in charge of plant production and was earning between $200 and $300 a week. During the late afternoon of May 17, 1973, LaClair was involved in the production of a silver-colored plastic. As part

---

[2] The action against Marian Plastics, brought under G. L. c. 152, § 66, proceeded to the jury and a verdict was rendered in the plaintiff's favor.

of this fabrication process, aluminum powder or pigment was mixed with various colors of polystyrene plastic in order to achieve a desired hue. It was LaClair's job to direct this color matching by emptying paper bags of aluminum powder into a blender which was fifteen feet in height.

As LaClair performed this task on May 17, a static spark allegedly ignited dust that was suspended between him and the floor. An explosion occurred and LaClair was enveloped in fire. Incurring severe burns about the face, hands, arms, back, and legs, La Clair was hurried to Peter Bent Brigham Hospital in Boston where, remaining conscious for almost the entire period of hospitalization, he received treatment until his death on May 26. At the time of the accident LaClair was forty-two years of age; he was survived by a wife, the plaintiff, and three children, the youngest then being two years old.

After the fire Marian Plastics went out of business. Its plant had been completely destroyed by the fire, and the corporation was ten months behind in rent payments and substantially in debt. The firm had failed to carry either fire or workmen's compensation insurance.[3] Robert E. Lewis was its president, treasurer, sole stockholder, as well as the day-to-day manager of company business; his wife, Elizabeth D. Lewis, was a director of the corporation, and Mary Cocuzzo, his sister, held the office of clerk.

In addition to these facts, it was disclosed at trial by Robert E. Lewis that Marian Plastics had made frequent, although not recent, purchases from Silberline Manufacturing Co., and that the aluminum powder in use at the time of the fire had been obtained from Silberline. Testimony from Francis R. Hankard, a chemist and the assistant chief of the chemical laboratory of the Commonwealth's Department of Public Safety, further indicated that the aluminum powder that LaClair was handling immediately

[3] Although it has ceased functioning as a going concern, it was indicated at trial that Marian Plastics, Inc., nevertheless remains an unliquidated corporation.

before the fire had been "dry,"[4] although, according to Lewis, powder moistened with twenty per cent mineral oil was the kind that had been ordered from Silberline. Hankard subsequently offered the opinion that if dispersed in the air aluminum powder could cause an explosion, and that the pouring of aluminum powder without mineral oil from a paper bag could itself produce an electrostatic charge that might trigger such a blast.

State police Detective-Lieutenant Raymond G. Roy was also called as a witness by the plaintiff. An inspector in the State fire marshal's office, Roy had investigated the Marian Plastics fire. In reporting his findings to the court, Roy was prepared to state his opinion that the cause of the fire and explosion was the ignition of a quantity of aluminum dust which had become suspended in the air while LaClair was pouring aluminum powder into the blender.[5] After voir dire, however, the judge refused to allow this portion of his testimony. Richard Smith, LaClair's coworker and the only eyewitness to the accident, testified after Roy and near the close of the trial. Although he evidently did not see the spark that allegedly led to the explosion, Smith stated that he observed silvery, powdery dust in LaClair's work area immediately before the conflagration.

Other evidence adduced at trial showed that the plant's sprinkler system failed to operate during the fire, that the lighting in the factory was not dustproof, and that no efforts had been made to provide company employees with safety clothing.

On appeal, the plaintiff contends that the judge erred in allowing all motions for directed verdicts against her. We consider these claims separately with respect to each defendant.

---

[4] This fact was determined by tests conducted on the residue found in the blender after the fire.

[5] Lieutenant Roy had questioned LaClair in the hospital two days after the fire. In this conversation, however, LaClair neither noted nor placed any significance in the dispersion of the aluminum powder that he was handling.

1. *Robert E. Lewis.* Two actions are alleged against Robert E. Lewis: (1) that he negligently failed to obtain workmen's compensation insurance in behalf of his employees, and (2) that he likewise failed to provide them with a safe place to work. We begin our examination with the first claim.

Since 1943 the Workmen's Compensation Act, G. L. c. 152, has been compulsory for most employees in the Commonwealth.[6] See G. L. c. 152, § 1. See generally L. Locke, Workmen's Compensation §§ 21-27 (1968). If an employer is in a compulsory category, the statute demands that provision be made for payment to employees of the compensation guaranteed by the Act either by insurance with a private insurer or by the employer's own qualification as a self-insurer. G. L. c. 152, § 25A. The penalties may be harsh for those employers who fail to comply with their duties under the Act. Where an employer neglects to provide coverage and an accident occurs, it may be sued in a civil action for the full scope of tort damages;[7] most importantly, during such action, the employer loses the ability to assert the common law defenses of fellow servant, assumption of the risk, contributory negligence, and the further defense that the employee's injury, if arising in the course of employment, did not result from negligence or other fault of the employer. G. L. c. 152, §§ 66-67. Compliance with the Act's mandate is further enforced by a statutory fine of not more than $500 and imprisonment for not more than one year for employers who fail to provide required coverage. G. L. c. 152, § 25C. Should the employer be a cor-

---

[6] See St. 1943, c. 529, § 7. In 1972 the categories of compulsory coverage were expanded so that the Commonwealth now requires almost universal coverage. See St. 1972, c. 374. All parties agree that the Act was compulsory for Marian Plastics.

[7] See, e.g., *Uberto* v. *Kaufman*, 348 Mass. 171 (1964); *Fisher* v. *Ciaramitaro*, 345 Mass. 199 (1962); *Taylor* v. *Newcomb Baking Co.*, 317 Mass. 609 (1945); *Roberts* v. *Frank's Inc.*, 314 Mass. 42 (1943); *Paananen* v. *Rhodes*, 1 Mass. App. Ct. 12 (1972).

poration, its president or treasurer, or both, may be personally liable for this criminal punishment. *Id.*

What these statutory provisions reveal, and what this court has often recognized,[8] is that the Workmen's Compensation Act is a humanitarian measure designed to provide adequate financial protection to the victims of industrial accidents. There can be little doubt that without the benefits provided by the statute, as enforced through compulsory insurance, many injured employees and their families would be forced to shoulder by themselves large portions of the costs of job-related accidents. See Friedman & Ladinsky, Social Change and the Law of Industrial Accidents, 67 Colum. L. Rev. 50 (1967). With workmen's compensation, the employee and the employee's family acquire a limited, although substantial, right to be insured against the grievous financial impact that may result from injury in the workplace.

Having observed the important function that workmen's compensation plays in the expectations of most workers, we return to the plaintiff's claim that the defendant Robert Lewis was negligent in not providing such coverage to the employees. As in all negligence cases, the trier of fact is to ask how a person of ordinary prudence would act in similar circumstances. *Goldstein* v. *Gontarz*, 364 Mass. 800, 805-806 (1974). Restatement (Second) of Torts §§ 283, 298 (1965). W. Prosser, Torts § 34 (4th ed. 1971). Given this principle, we believe that the judge erred by directing a verdict against the plaintiff on this specific action.

There was sufficient evidence, in our view, to make Robert Lewis's failure to provide workmen's compensation coverage a question of negligence that should have been submitted to the jury. First, we note that Robert Lewis, as corporate president and treasurer, was capable of being penalized by criminal sanctions for his firm's failure to obtain workmen's compensation insurance. G. L. c. 152,

---

[8] See e.g., *Cox's Case*, 225 Mass. 220, 223-224 (1916); *Meley's Case*, 219 Mass. 136, 139 (1914).

§ 25C. As has been frequently stated, a violation of a safety statute or like enactment, while not conclusive on the ultimate issue of civil liability, is evidence of a violator's negligence as to all consequences that the statute was intended to prevent. *Perry* v. *Medeiros*, 369 Mass. 836, 841 (1976).[9] Underlying this rule is the general belief that the duties imposed by legislatively-prescribed conduct are normally reasonable ones to bear.

Furthermore, there is no doubt that Lewis was well aware of Marian Plastics' precarious financial condition; hence, it could have been inferred that he was or should have been cognizant of the likely futility an injured employee would confront were he or she to attempt to reach the assets of the company for satisfaction of a personal injury claim against the corporation. See Sabel, The Uncompensated Industrial Injury, 36 Mich. L. Rev. 935, 946 (1938). Likewise, in view of Marian Plastics' regular use of extremely volatile chemicals and the plant's concededly poor safety precautions, it could have been inferred that Lewis, as the company manager, knew or should have known that there was a significant probability of industrial accidents occurring in the production process. That Lewis's failure to obtain workmen's compensation coverage occurred while he was performing corporate business would not, of course, immunize him personally from liability to the plaintiff. *Jet Spray Cooler, Inc.* v. *Crampton*, 377 Mass. 159, 181 (1979). *Nader* v. *Citron*, 372 Mass. 96, 102-103 (1977). *Donsco, Inc.* v. *Casper Corp.*, 587 F.2d 602, 606 (3d Cir. 1978). Cf. *Leavitt* v. *Glick Realty Corp.*, 362 Mass. 370, 373-374 (1972); *Buck* v. *Clauson's Inn at Coonamessett, Inc.*, 349 Mass. 612, 614-615 (1965). See W. Knep-

---

[9] See *McDonough* v. *Whalen*, 365 Mass. 506, 515 (1974); *Leone* v. *Doran*, 363 Mass. 1, 8 (1973); *Kralik* v. *LeClair*, 315 Mass. 323, 326 (1943); *Richmond* v. *Warren Inst. for Sav.*, 307 Mass. 483, 485 (1940); *Gaw* v. *Hew Constr. Co.*, 300 Mass. 250, 254 (1938); *Baggs* v. *Hirschfield*, 293 Mass. 1, 3 (1935); *Gordon* v. *Bedard*, 265 Mass. 408, 411 (1929); *Horsman* v. *Brockton & Plymouth St. Ry.*, 205 Mass. 519, 522-523 (1910).

per, Liability of Corporate Officers and Directors § 5.08 (3d ed. 1978). A corporate officer is liable for torts in which he personally participated whether or not he was acting within the scope of his authority.

In reaching the above result, we do not say that the simple failure to obtain workmen's compensation coverage is by itself negligence. We hold only that negligence *may* be found, if the facts permit, where a business official disregards a duty to purchase such insurance or certify his firm as a self-insurer. It is not unusual for the employment relation to give rise to a duty to act on the part of the employer or its agents. E.g., *Newman* v. *Redstone*, 354 Mass. 379 (1968) (master has duty to render aid to servant who becomes hurt while in his employ). Cf. *Becker* v. *Interstate Properties*, 569 F.2d 1203 (3d Cir. 1977), cert. denied, 436 U.S. 906 (1978). See generally M.S. Shapo, The Duty to Act: Tort Law, Power & Public Policy 8 (1977). In addition to the duty to obtain workmen's compensation coverage, employers hold duties to withhold their employees' Federal and State income taxes, 26 U.S.C. §§ 3401-3404 (1976); G. L. c. 62B, § 10, and to make similar payments to the Social Security Administration, 26 U.S.C. § 3102 (1976). Indeed, rather than being a novel expansion of the common law, cf. *Mone* v. *Greyhound Lines, Inc.*, 368 Mass. 354 (1975); *Diaz* v. *Eli Lilly & Co.*, 364 Mass. 153 (1973), the decision we set forth here is merely an application of existing negligence principles.[10] This distinction aside, our reasoning carries with it the implicit hope and expectation that the self-interest of employers, their officers, and agents will lead them all to consistent compliance with c. 152 and, in turn, to a reduction in uncompensated industrial accidents.[11] See Posner, A Theory of Negligence, 1 J. Legal Stud. 29 (1972); G. Calabresi, The Cost of Accidents (1970).

---

[10] Negligent conduct, according to the Restatement, includes acts, as alleged here, which "[t]he actor, as a reasonable man, should realize . . . involv[e] an unreasonable risk of causing an invasion of an interest of another." Restatement (Second) of Torts § 284 Comment a (1965).

[11] We note also the conclusion of the National Commission on State Workmen's Compensation Laws (1972): "Special means are needed to

It is thus clear that the plaintiff is entitled to a new trial in this case. Of course, she shall have the burden of proving damages should the jury on retrial determine that Lewis is liable for his failure to obtain workmen's compensation coverage. Recovery, moreover, must be limited to that amount which would have been obtained under G. L. c. 152 had workmen's compensation coverage been provided for the decedent. The harm inflicted by this defendant's negligence would warrant recovery in no greater sum given the absence of a statute establishing the measure of damages. Compare with G. L. c. 152, § 66.

Although certain facts relevant to proof of entitlement to some workmen's compensation were established at trial, we can offer no opinion regarding the extent of recovery herein by the plaintiff, the decedent's estate, or other persons. Some of the factors which may be relevant to this assessment were not placed in evidence in the case before us. Likewise, we make no comment concerning the necessity of amendment in order to present all claims that may be appropriate under this cause of action.

As to the plaintiff's second claim against Robert E. Lewis — that Lewis failed to provide the decedent with a safe place to work — we do not discern that the judge erred in allowing the defendant's motion for a directed verdict. It is unquestionably true that Lewis, as the sole manager of the Marian Plastics plant, owed LaClair duties to use reasonable care to provide him with a safe place in which to work and to furnish and maintain reasonably safe and proper machinery and equipment with which to perform his assigned tasks.[12] *Roberts* v. *Frank's Inc.*, 314 Mass. 42, 45 (1943),

---

protect employees in the event the employer fails to comply with the insurance requirements of the workmen's compensation law or if a carrier or employer becomes insolvent. Insolvency is a risk of the free enterprise system, but the penalties should not be assessed upon disabled employees." Reprinted in 1 Workmen's Compensation L. Rev. 657, 666 (1974).

[12] Negligence in this regard may also carry criminal implications. See *Commonwealth* v. *Godin*, 374 Mass. 120 (1977).

and cases cited. See *United States* v. *Sancolmar Indus.,
Inc.,* 347 F. Supp. 404, 408 (E.D.N.Y. 1972); *O'Keefe* v.
*Warner,* 288 So. 2d 911, 915 (La. 1973). For purposes of
argument, we may even assume that these duties were
breached by Lewis's failure to provide plant employees with
a functioning sprinkler system, dustproof lighting, or fire-
proof clothing.

The plaintiff's case is still lacking, however, because no
evidence of causation was presented· at trial: there was no
proof that "but for" this negligence the injury to LaClair
would not have occurred. See *Soares* v. *Lakeville Baseball
Camp, Inc.,* 369 Mass. 974, 974-975 (1976); *Zezuski* v. *Jenny
Mfg. Co.,* 363 Mass. 324, 328 (1973); Restatement (Second)
of Torts § 430 (1965). Since this key element of the case may
not be left to the jury's conjecture, see *Carey* v. *General
Motors Corp.,* 377 Mass. 736, 739-740 (1979); *Swartz* v.
*General Motors Corp.,* 375 Mass. 628, 633 (1978), the judge
was correct in entering judgment against the plaintiff con-
cerning this aspect of her case against Robert E. Lewis.

2. *Silberline Manufacturing Co., Inc.* We next examine
the judge's allowance of directed verdict motions in favor of
the Silberline Manufacturing Company. Actions in both
negligence and breach of warranty were brought against
this defendant on the theory that aluminum powder it pro-
duced and sold was the cause of the explosion and fire that
led to LaClair's death. Because the plaintiff's evidence was
seen as falling short of establishing any proof that aluminum
powder contributed to cause the accident, the judge re-
moved these issues from the jury. There was no error.

In examining the plaintiff's case against Silberline, we as-
sume, although the issue was contested at trial, that there
was sufficient evidence that the aluminum powder in use
the day of the fire was manufactured by Silberline. Indeed,
Robert Lewis testified to this effect. Cf. *Smith* v. *Ariens
Co.,* 375 Mass. 620 (1978). Moreover, testimony was of-
fered, by way of Francis Hankard, indicating that such
powder had an explosive capacity in the circumstances in
which it was being handled at the Marian Plastics plant.

Nevertheless, there was no evidence — expert opinion or otherwise — that the aluminum powder did in fact provide the fuel for the explosion. Hankard's testimony, read in its entirety, supports no greater inference than that it was *possible* that Silberline powder caused the explosion. See *Swartz, supra* at 633. Thus, there was no proper basis for the jury to have concluded that it was more probable than not that the event was caused by the defendant's product. See *Carey, supra* at 740; *Cannon* v. *Sears, Roebuck & Co.*, 374 Mass. 739, 742 (1978); *Necktas* v. *General Motors Corp.*, 357 Mass. 546, 551 (1970) (Spiegel, J., dissenting); Restatement (Second) of Torts § 433B (1965). "A verdict may not be based on conjecture and surmise, and expert opinion does not help if it is demonstrated that it rests on speculation." *Swartz, supra* at 633.

It is the plaintiff's contention, however, that the necessary causal link would have been supplied, had it not been improperly excluded by the judge, through the expert testimony of Raymond Roy, the State fire inspector who had investigated the blaze. We disagree with the thrust of this argument. The judge did not err in excluding Roy's opinion as to causation given the point in the trial in which it was offered.

Expert opinion, particularly when addressed to a jury, must be based on either the expert's direct personal knowledge, on evidence already in the record or which the parties represent will be presented during the course of the trial, or on a combination of these sources. W.B. Leach & P.J. Liacos, Massachusetts Evidence 100, 101 (4th ed. 1967); I.G. Mottla, Proof of Cases in Massachusetts § 348 (2d ed. 1966).[13] Although Roy was prepared to offer the opinion that the explosion was caused by the ignition of a cloud of

---

[13] Compare *Kaye* v. *Newhall*, 360 Mass. 701, 702-703 (1972); *Standard Paper & Merchandise Co.* v. *Springfield*, 356 Mass. 475, 477 (1969); *Cohen* v. *Maritime Transp. Co.*, 353 Mass. 760, 760-761 (1968); *Pintsopolous* v. *Home Ins. Co.*, 340 Mass. 734, 737 (1960), with *Brewster* v. *Giant Store, Inc.*, 362 Mass. 859 (1972); *Bearse* v. *Fowler*, 347 Mass. 179, 180-182 (1964); *Nass* v. *Duxbury*, 327 Mass. 396, 401-402 (1951).

aluminum powder suspended between the decedent and the floor, Roy himself clearly never viewed such a cloud. Nor was there any evidence in the record at the time the question was asked — or any promised for later presentation — that such a cloud had ever existed before the accident.[14]

While it can be observed that LaClair's coworker, Richard Smith, later testified to viewing aluminum dust prior to the explosion, the plaintiff's attorney never sought to use this statement as a foundation to reexamine Roy regarding his opinion as to the accident's causation. Hence, when the evidence closed, the record was barren of any proof supporting the proposition that Silberline powder was a cause of the explosion.[15]

3. *Elizabeth D. Lewis and Mary Cocuzzo.* Finally, it is our conclusion that the judge committed no error directing verdicts in favor of the defendants Elizabeth D. Lewis and Mary Cocuzzo. The only connection that these parties had to LaClair's accident was that one was a director of Marian Plastics and the other was its clerk. Such status, without more, is plainly insufficient to establish civil liability, whether on a theory of negligent failure to provide workmen's compensation coverage, compare G. L. c. 152, § 25C,

---

[14] Even under the more liberal opinion evidence standards, e.g., Fed.R.Evid. 703, we greatly doubt that Roy's opinion would have been admissible at the point in time it was offered. See Advisory Committee's Note to Fed.R.Evid. 703.

[15] Were the plaintiff to have succeeded in demonstrating causation, a directed verdict in favor of Silberline might have been appropriate for other reasons. There appeared to be no proof submitted that the defendant's sale or manufacture of aluminum powder was negligent. For example, there was no evidence to support a theory that there was a legal burden on the manufacturer to mix mineral oil with aluminum powder before offering it for sale. Furthermore, the plaintiff's breach of warranty claim suffered a likely "privity" problem in view of the fact that Marian Plastics' last purchase of Silberline powder occurred in 1967 while the fatal injury to LaClair transpired before the effective date of the Legislature's latest revision of the "privity" requirements of G. L. c. 106, §§ 2-314—2-318. St. 1973, c. 750. See *Back* v. *Wickes Corp.*, 375 Mass. 633 (1978); *Swartz* v. *General Motors Corp.*, 375 Mass. 628 (1978); *Hoffman* v. *Howmedica, Inc.*, 373 Mass. 32 (1977).

and *supra,* or predicated on the corporation's inadequate provision of safety precautions. *Burnham* v. *Beverly Airways, Inc.,* 311 Mass. 628, 637-638 (1942), and cases cited. *Martin* v. *Wood,* 400 F.2d 310, 314-315 (3d Cir. 1968).

4. *Summary.* We affirm the judgment in favor of the defendants in all the above actions except the claim charging Robert Lewis with negligent failure to obtain workmen's compensation coverage. That action is to be remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*