### Rainey D. Slater's Case.

No. 00-P-1733.

Suffolk. February 14, 2002. - June 24, 2002.

Present: Duffly, Dreben, & Trainor, JJ.

*Statute,* Construction. *Insurance,* Workers' compensation insurance. *Workers' Compensation Act,* Appeal, Compensation, Total incapacity, Exhaustion of benefits.

This court declined to read into the provisions of G. L. c. 152, § 34A, as amended by St. 1991, c. 398, §§ 59 and 60, a requirement that an employee, once found to be permanently and totally disabled, exhaust his temporary total disability benefits under G. L. c. 152, § 34, before collecting the higher amount of permanent total disability benefits available under § 34A, as well as the cost of living benefits available under G. L. c. 152, § 34B, where such a reading of the statute was inconsistent with the long-standing tradition of construing c. 152 in light of its beneficial purpose. [327-331]

Appeal from a decision of the Industrial Accident Reviewing Board.

*Esther C.S. Dezube* (*Samuel M. Hausman* with her) for the employee.

*John A. Smillie* for the insurer.

Dreben, J. Under the workers' compensation act (act) there are three types of weekly compensation benefits an injured employee may receive: temporary total disability benefits (G. L. c. 152, § 34), partial disability benefits (§ 35), and permanent total disability benefits (§ 34A). The question raised by the employee's appeal is whether he was required, once he was found to be permanently and totally disabled, to exhaust his temporary benefits under § 34 before collecting the higher benefits of § 34A, as well as the cost of living benefits of § 34B. The reviewing board of the Department of Industrial Accidents (board), with one member dissenting, concluded that

he was required to exhaust his § 34 temporary benefits before being entitled to permanent benefits.[1] We reverse.

There is no dispute about the facts as set forth by the administrative judge and the board. The employee sustained a traumatic brain injury on October 22, 1996, while working for his employer, when the hook at the end of a crane "smashed into [his] head." Although the employee did not testify at the hearing before the administrative judge, he did appear with his attorney, and the administrative judge found that he was "clearly severely incapacitated in his functioning." Based on the medical evidence before him, the administrative judge also found that the employee was "permanently totally disabled as of November 24, 1997." The parties stipulated to the industrial injury, to the employee's base average weekly wage, and to his total incapacity.

We turn to the two provisions providing benefits for total incapacity. In 1991 there was a substantial revision of the act. Sections 34 and 34A, as amended by St. 1991, c. 398, §§ 59 and 60, provide as follows:

Section 34 (temporary total incapacity):

"While the incapacity for work resulting from the injury is total, during each week of incapacity the insurer shall pay the injured employee compensation equal to sixty percent of his or her average weekly wage before the injury, but not more than the maximum weekly compensation rate . . . ."[2]

"The total number of weeks of compensation due the employee under this section shall not exceed one hundred fifty-six."

Section 34A (permanent total incapacity):

"While the incapacity for work resulting from the injury is both permanent and total, the insurer shall pay to the injured employee, *following payment of compensation*

---

[1]The reviewing board affirmed the administrative judge's decision to dismiss, as premature, the employee's § 34A claim.

[2]The material deleted states: "unless the average weekly wage of the employee is less than the minimum weekly compensation rate, in which case said weekly compensation shall be equal to his average weekly wage."

*provided in sections thirty-four and thirty-five,* a weekly compensation equal to two-thirds of his average weekly wage before the injury, but not more than the maximum weekly compensation rate nor less than the minimum weekly compensation rate." (Emphasis supplied.)

The board interprets the italicized words as a 1991 reinstatement of the exhaustion requirement that was in effect prior to 1985.[3] In the board's view, the employee must receive lower benefits for three years (156 weeks) under § 34 before receiving § 34A benefits.

The pre-1985 version of § 34A, however, unlike the 1991 revision of 34A, specifically provided for an exhaustion requirement, stating that § 34A payments would begin "following payment of the maximum amount of compensation provided in sections thirty-four and thirty-five, or either of them . . . ." As the dissenting member of the board noted, "To read the disputed statutory phrase ('following payment of [maximum] compensation provided in' §§ 34 and 35) as an exhaustion requirement, one must add the word 'maximum' to the Legislature's 1991 amendment . . . ."

In its present form, without the word "maximum," the provision has a sensible meaning. Until a seriously injured employee's condition has stabilized and it is known whether the employee's condition will improve, he or she will in the usual course first receive payments under § 34. Thereafter, sometimes the employee's condition will improve, and he or she will receive partial payments under § 35. There are also occasions when the condition of an employee receiving § 35 payments will worsen, and, therefore, he or she may be entitled to total incapacity benefits after receiving partial incapacity benefits. Where, as here, the statute read literally makes sense and where the Legislature had the clear model of the pre-1985 provision, we see no reason to add words to § 34A.

---

[3]From 1935 to 1945, there was no exhaustion requirement in § 34A. A 1945 amendment, St. 1945, c. 717, required exhaustion. The payments at the time of that amendment were higher under § 34 (two-thirds of average weekly wage) than under § 34A (one-half of average weekly wage). In 1949, St. 1949, c. 520, § 2, increased § 34A benefits to two-thirds of the average weekly wage. In 1985 the exhaustion requirement was deleted. St. 1985, c. 572, § 43.

Moreover, not requiring exhaustion seems more consistent with the provisions of §§ 35 and 34B. Section 35 provides that, in the absence of an agreement by the insurer or a finding by an administrative judge, the number of weeks an employee may receive benefits under § 34 and § 35 shall not exceed 364. The board's interpretation would require a permanently totally incapacitated employee who had previously received partial benefits to exhaust both the § 34 and § 35 payments and, therefore, to wait at least seven years before receiving payments under § 34A or a cost of living adjustment under § 34B.[4] Nothing suggests that the Legislature had such a harsh intent.

The provisions of § 34B that provide for a cost of living adjustment also seem incongruous with the three-year exhaustion requirement determined by the board. That provision which, in relevant part, is set forth in the margin,[5] was also revised in 1991, and, specifically referring to § 34A, envisions the possibility of a cost of living increase for an employee receiving benefits under § 34A prior to the expiration of the three-year period during which payments may be made under § 34.[6]

---

[4]In *Constant* v. *Family Planning Council*, 11 Mass. Workers' Comp. Rep. 550 (1997), a case in which the employee had exhausted her § 34 benefits, the reviewing board held that an insurer had to pay § 34A benefits without requiring the exhaustion of benefits under both §§ 34 and 35, pointing out that there was no specific language regarding exhaustion per se, and that to argue that the word "and" created a dual exhaustion requirement would lead to an absurd result, e.g., a person who is in a permanent coma would be required to wait and receive all § 34 and § 35 benefits before receipt of § 34A benefits. The board in *Constant* specifically noted that it did not need to reach the issue of entitlement to § 34A benefits when neither § 34 nor § 35 benefits is paid to the statutory maximum as the employee had exhausted her § 34 benefits.

[5]"October first of each year shall be the review date for the purposes of this section.

"Any person receiving or entitled to receive benefits under the provisions of section thirty-one or section thirty-four A whose benefits are based on a date of personal injury at least twenty-four months prior to the review date shall have his weekly benefit adjusted, without application, in accordance with the following provisions . . . ."

[6]Indeed, if the intent had been to require exhaustion of § 34 benefits, § 34B would more properly have been written as follows: "Any person receiving or entitled to receive benefits under the provision of § 31 whose benefits are based on a date of personal injury at least twenty-four months prior to the review date, or any person receiving or entitled to receive benefits

The majority of the board considered the language of § 34A to be unclear and relied on the Legislature's main objective of saving costs in reaching its decision.[7] Reliance on cost savings to interpret each provision of the act would in one fell swoop nullify the traditional statutory construction of c. 152. As recently as in *CNA Ins. Cos.* v. *Sliski*, 433 Mass. 491, 493 (2001), the Supreme Judicial Court explained the purpose of the chapter and how it should be interpreted:

> "We have long recognized that the workers' compensation statute was enacted as a 'humanitarian measure' in response to strong public sentiment that the remedies afforded by actions of tort at common law did not provide adequate protection to workers who were the victims of industrial accidents. *Young* v. *Duncan*, 218 Mass. 346, 349 (1914). *LaClair* v. *Silberline Mfg. Co.*, 379 Mass. 21, 27 (1979). We have stressed that the statute should be given a broad interpretation, viewed in light of that purpose. *Roberge's Case*, 330 Mass. 506, 509 (1953)."

While "[a] reviewing court accords due weight and deference to an agency's reasonable interpretation of a statute within its charge, *Massachusetts Med. Soc'y* v. *Commissioner of Ins.*, 402 Mass. 44, 62 (1988), . . . '[t]he duty of statutory interpretation is for the courts.' *Cleary* v. *Cardullo's, Inc.*, 347 Mass. 337, 344 (1964)." *Police Commr. of Boston* v. *Cecil*, 431 Mass. 410, 413 (2000). In view of the long-standing tradition of construing c. 152 in light of its beneficial purpose, we decline to add the word "maximum" to language contained in § 34A based on a general legislative intent to save costs or reduce a backlog. For us to insert such additional language requires a far clearer legislative directive.

Accordingly, the decision of the reviewing board dated April 14, 2000, is reversed, and the matter is remanded to the Depart-

---

under § 34A, shall have his benefits adjusted . . . ." If there were an exhaustion requirement, the twenty-four month period would not be needed with respect to § 34A, as there would be at least a three-year period before an employee would be entitled to those benefits under the board's interpretation.

[7]The board also noted that another major goal of the 1991 legislation was to reduce the backlog of cases and that requiring exhaustion accomplishes this purpose by delaying litigation of § 34A claims.

ment of Industrial Accidents to issue an order consistent with this opinion.

*So ordered.*