CHI TRUONG *vs.* CHENG YAH WONG & another.[1]

No. 99-P-1284.

Suffolk. April 3, 2001. - September 18, 2002.

Present: BECK, RAPOZA, & BERRY, JJ.

*Practice, Civil,* New trial, Directed verdict. *Damages,* Tort, Loss of earning capacity. *Evidence,* Earning capacity. *Corporation,* Officers and agents. *Negligence,* Employer, Failure to obtain workers' compensation coverage. *Workers' Compensation Act,* Uninsured employer, Failure to obtain insurance, Recovery from third person.

In an action against a corporation and its president for personal injury damages, the judge did not abuse his discretion in declining to grant a new trial on the ground of excessive damages, where the jury were properly instructed regarding the elements to be considered in awarding damages, and where there was no evidence suggesting that the jury did not follow the instructions given. [873-874]

In an action brought against a corporate president by an employee for personal injury damages, the judge erred in granting a directed verdict in favor of the president with respect to damages and medical expenses to which the president had stipulated [874]; further, the judge erred in granting a directed verdict in favor of the president with regard to damages other than those the president had conceded, where the evidence presented at trial, taken in the light most favorable to the employee, was sufficient to support the jury's advisory findings that the president was negligent and that the employee was totally incapacitated for an indefinite period of time [874-877]; finally, where the remaining question of the computation of damages was a question of law, to be determined by the provisions of G. L. c. 152, this court remanded the claim for assessment of damages by the trial judge [877].

This court concluded that, in the circumstances of a personal injury action brought by an employee against an uninsured corporation and its president, both of whom were in effect the employer, the employee was entitled to bring an action and seek a judgment against both parties, and could recover damages for which the employer had been determined to be liable; however, while the employee could elect which judgment to execute against first, the employee could not execute against the second unless he did not receive from the first the entire payment due him. [877-878]

CIVIL ACTION commenced in the Superior Court Department on March 12, 1998.

[1]Yah Kee, Inc.

The case was tried before *Barbara J. Rouse*, J.

*John N. Lewis* for the defendants.

*Joseph K. Mackey* for the plaintiff.

BECK, J. On May 29, 1997, the plaintiff-employee, Chi Truong, suffered an injury in the course of his work at the defendants' tofu manufacturing plant. There is no dispute that the defendant-employer, Yah Kee, Inc. (corporation), did not carry workers' compensation insurance and was not self-insured. In the absence of the requisite insurance, the employee filed a complaint in Superior Court for personal injury damages against the corporation as well as against the president and treasurer of the corporation, defendant Cheng Yah Wong (president). The parties cross-appeal from judgments on issues related to liability and damages.

*Governing legal principles.* Every employer in the Commonwealth, with certain limited exceptions, is required to carry workers' compensation insurance, unless self-insured or a member of a self-insurance group if so qualified. See generally Locke, Workmen's Compensation § 1, at 3 (Koziol Supp. 2000). If an employer fails to provide such coverage, an injured employee may sue the employer in a civil action for the full scope of tort damages. G. L. c. 152, §§ 66, 67. In such an action, the employer may not assert certain critical common-law defenses. *Ibid.* See *LaClair* v. *Silberline Mfg. Co.*, 379 Mass. 21, 26 (1979). An employee may also bring an action in tort against a corporate officer who negligently fails to obtain workers' compensation coverage. See *id.* at 29. In such a case the measure of damages is the "amount which would have been obtained under G. L. c. 152 had work[ers'] compensation coverage been provided." *Id.* at 30.

*The trial evidence.* The jury could have found the following facts. The employee began work for the corporation in 1980 when he came to the United States at the age of forty-seven. For seventeen years he worked eleven hours a day, six days a week, originally at a plant on Tyler Street in Boston and more recently in Waltham, making tofu and doing manual tasks associated with that endeavor. He does not speak English.

On the morning of May 29, 1997, the employee slipped and fell on a wet floor at work and injured his right wrist in an at-

tempt to break his fall. (The employee is right-handed.) That afternoon the employee went to see a Chinese doctor who was a "healer with bones." That doctor referred the employee to the New England Medical Center. The employee went to the emergency room the next day, and from there he was referred to the hand clinic. On June 5, the chief hand surgeon at that hospital performed corrective surgery on the employee's fractured wrist. The surgeon aligned the bony fragments in the plaintiff's arm, inserting two pins in the bone between the plaintiff's wrist and his fingers and two other pins in one of the major bones in his forearm. The surgeon then connected the pins with two carbon rods. At the time of his injury the employee was sixty-four years old.

Two months later, on August 1, the doctor removed the pins and applied a removable splint. The employee then began physical therapy. By September, the employee's strength improved but was still far from normal. There was improvement after September, but the employee did not regain his original level of functioning. One year after the surgery, the surgeon estimated that the employee had regained seventy-five percent of his strength and eighty to ninety percent of his preinjury motion. The doctor did not expect further improvement and observed that older people do not heal as well or as fast as younger people. They also have less endurance.

Testifying through an interpreter, the employee described the circumstances of his fall and his subsequent treatment. In the course of his testimony, he also described in detail his work at the tofu factory, including loading carts with ten sixty-pound bags of beans and then emptying the bags in tanks. As for the effect of his accident, he testified that carrying a chicken of a few pounds "would be a great effort"; that pushing things was very painful; and that he did not have enough strength in his right hand to work, "because if there were enough strength [he] would go to work." In the course of his testimony, he demonstrated the extent of motion in his right hand. He testified that he could not physically do his former work because he would need both hands to push the pail around every time. He said he had "asked around [for other work], but a lot of the Chinese work requires a lot of heavy lifting. [He also observed]

I'm older now." The employee's daughter, who had dinner with her father every night, testified that her father tends to use his left hand more, had trouble using chop sticks, and regularly depends on painkillers.

The president, who came to this country in 1975, has served as president of the corporation since the late 1980's when his father retired from the family business. Although the president's insurance agent told him about workers' compensation insurance, he did not buy any because it was "too expensive." The theory of the defense was that the employee was not injured at work, or at least that he was "not [being] honest" about the accident and his injury, and was looking for "a retirement plan."

*The trial process.* The employee's claims against the corporation and the president were tried before a Superior Court judge and jury over two days. At the close of the employee's case, counsel for the employee attempted "to introduce requests for judicial notice of sections 34, 35, 36, and 37 [of G. L. c. 152]." The employee claimed that "once there is a determination that [the employee] was in fact injured, and once there is a determination that [the president] was in fact negligent, it [is] a question of law as to what the damages are as to [the president] . . . [because] the damages [are] spelled out in the workers' compensation statute." The judge responded that before there could be calculations, the jury would have to make other determinations, including the extent of the employee's disability. With that disagreement unresolved, the employee rested, as did the defendants. The defendants then moved for a directed verdict.

Among the several grounds set out in the motion, the hearing focused primarily on the president's contention that the employee had failed to carry his burden of proving damages. The president asserted that "[t]here has been nothing presented to the jury which would allow them to figure out what [the plaintiff] is entitled to in medical expenses, what he's entitled to in lost wages, what his comp[ensation] rate would have been, what kind of calculations are made against the statutory scheme for disability. . . . [I]t would be totally speculative on the part of the jury to try to figure out, with or without reading the [workers' compensation act,] what [the employee] is entitled to as a matter of damages."

The judge asked counsel for the employee whether there had been any evidence she had missed as to what the employee was capable of earning after the accident. Counsel responded that the employee's theory of the case was that he was "disabled from any type of work" and that he therefore had no duty to present evidence to prove that he had an ability to work and earn money. After further discussion, the employee repeated his argument that it was his burden to prove the extent of disability and "then it's a question of law as to how the workers' compensation statute is applied to those factual issues."

The judge referred to *LaClair* v. *Silberline Mfg. Co.*, 379 Mass. 21, for the proposition that the burden is on the plaintiff to prove the amount of damages he would be entitled to under G. L. c. 152, "and if that requires an expert, which I suggest it might, then the expert has to be brought forward." The judge then ruled that "the [employee] has [not] put in sufficient evidence on what amount he would have received under the workers' compensation statute with respect to benefits under that statute in order to put the case to the jury on that question." She decided, however, to put the question of the president's negligence and two specific "advisory" fact questions regarding the extent of the employee's incapacity for work to the jury "because . . . it may be instructive to counsel about the jury's view of the case."

A document entitled "Special Jury Questions" went to the jury. Question 1(a) asked whether "the injury to [the employee arose] out of and in the course of his employment." Question 1(b) asked "[w]hat amount of damages would fairly and adequately compensate the [employee]." Question 2 inquired whether the president was "negligent in his failure to obtain workers' compensation insurance." Question 3 asked about the period of time for which the employee was incapacitated for work, and question 4 asked whether the employee's incapacity for work was total or partial. There was no indication on the document or in the judge's instructions to the jury that questions 2, 3, and 4 were advisory; the judge gave instructions for each question.

Upon deliberation, the jury determined that the employee was injured in the course of his employment and awarded him

$250,000 in damages. As to the advisory questions, the jury found that the president was negligent in failing to obtain workers' compensation insurance, and that the employee was totally incapacitated for an indefinite period of time. Five days later, two judgments issued: one for the employee, awarding him $250,000, the other for the president on directed verdict.

The corporation moved for a new trial on damages. The employee moved for entry of judgment (later referred to in his notice of appeal as a "Rule 59 motion"), asserting entitlement to damages of $151,320 under sections 34, 34A, 35, 30, and 50 of the workers' compensation statute against the president. The trial judge denied both motions.

*Issues on appeal.* On appeal, the corporation claims the damages awarded against it were excessive. In his cross appeal, the employee argues that it was error to enter a directed verdict against him in his claim against the president. The employee further asserts that he is entitled to recover against both the corporation and the president. In their reply brief, the defendants argue that there was no basis for the employee's posttrial motion for entry of judgment; that the employee failed to exhaust his administrative remedies; and that the president should be given credit for the recovery against the corporation.

*Discussion.* 1. *Corporation's appeal: excessive damages.* The corporation contends that the verdict against it should be set aside (or, more properly, that it was error to deny its motion for a new trial on damages) because the jury's verdict was (a) "so excessive as to shock the conscience of the court"; (b) "clearly erroneous and against the weight of the evidence"; and (c) "the result of the erroneous inclusion of the negligence of the individual defendant [president] as an element to be considered . . . in awarding damages against the corporate defendant."

"An appellate court will not find an abuse of discretion in the judge's refusal to grant a new trial on the ground of excessive damages, unless the damages awarded were greatly disproportionate to the injury proven or represented a miscarriage of justice." *Moose* v. *Massachusetts Inst. of Technology*, 43 Mass. App. Ct. 420, 427 (1997), quoting from *Mirageas* v. *Massachusetts Bay Transp. Authy.*, 391 Mass. 815, 822 (1984). This deference is particularly appropriate when the judge deciding

the motion is the trial judge. See *Thayer* v. *Pittsburgh-Corning Corp.*, 45 Mass. App. Ct. 435, 443 (1998). Here we find nothing in the record to suggest that the judge abused her discretion.

The judge properly instructed the jury that "there is no magic formula by which you calculate damages here," and set out elements for their consideration — medical expenses, physical pain and suffering, mental or emotional pain and suffering, lost wages, loss of earning capacity (based on age, health, education, and vocational history), physical dysfunction, and permanent disability. There was no objection to this instruction, which sets out wide parameters for the jury.

As to the claim that the jury's damage award was somehow influenced by the advisory question concerning the negligence of the president because there was only one question about damages on the special questions document, that argument is speculative. The jury were instructed to answer the questions in the order presented. The questions about corporate liability came first, before the questions relating to the claim against the president. We assume that the jury followed the judge's instructions. See *Luz* v. *Stop & Shop, Inc. of Peabody*, 348 Mass. 198, 207-208 (1964). The fact that there was no separate question regarding damages against the president does not suggest that the jury did not follow the instructions.

2. *Employee's cross appeal: liability of the president.* In his cross appeal, the employee claims error in the allowance of the president's motion for directed verdict. At the outset, we note that in the course of the trial, the president stipulated to the "medicals" and the employee's total disability during the period the employee "had the device on his arm." The president also acknowledged that the employee presented sufficient evidence to show that he was entitled to recover his medical expenses of $5,021 and wages lost from May 29 to September 29. Therefore, at least as to the stipulated damages and medical expenses, the motion for directed verdict should not have been allowed.

We turn next to the judge's comments regarding the holding in *LaClair* v. *Silberline Mfg. Co.*, 379 Mass. 21. In *LaClair, supra* at 30, the court held that in an action against an individual corporate officer, the plaintiff employee has "the burden of proving damages" if the jury finds the officer liable for the

failure to obtain workers' compensation insurance. "Recovery, [however, is] limited" to the amount the employee would have received under the workers' compensation statute. *Ibid.* It appears that the judge may have interpreted *LaClair* to stand for the proposition that, as she put it, "the burden is on the plaintiff to prove the amount of damages . . . he would have been entitled to under Chapter 152." To the extent that the judge was referring to money damages rather than physical or emotional damage, we disagree, at least on the facts of this case. As the employee argues, once an employee proves the amount of harm suffered by way of degree and duration of incapacity for work, particularly as in this case, if the fact finder concludes that the injury was permanent and total, the computation of damages is determined by the provisions of G. L. c. 152. See, e.g., G. L. c. 152, § 34 (compensation for temporary total incapacity equals sixty percent of employee's weekly wage for up to one hundred fifty-six weeks); G. L. c. 152, § 34A (compensation for permanent total incapacity, following payment under §§ 34 or 35, equal to two-thirds of average weekly wage).

That brings us to the more difficult question of whether "anywhere in the evidence, from whatever source derived, any combination of circumstances could be found from which a reasonable inference could be drawn in favor of the [employee]," *Rolanti* v. *Boston Edison Corp.*, 33 Mass. App. Ct. 516, 520 (1992) (citations omitted), other than the damages the president conceded. See *Sahagan* v. *Commonwealth*, 25 Mass. App. Ct. 953, 953 (1988) ("The test on [a] motion for directed verdict is whether the evidence, taken in a light most favorable to the plaintiff, without considering its weight or credibility, was adequate to support an inference imposing liability on the defendant").

In the light most favorable to the employee, there was evidence that he was sixty-four at the time of the injury; had spent his working life, at least since arriving in the United States, in manual labor; speaks only Chinese; planned to continue working indefinitely; had limitations in range of motion and strength as well as pain in his dominant hand and forearm; was unable to continue the manual labor he had been doing; and discovered that the only work available in the

Chinese community for someone with his skills was manual. He testified that he was unable to obtain work that he could do.

The judge's comments suggest that she may have thought expert testimony on the disability-incapacity issue was required. While it is true that a plaintiff's testimony describing his pain and inability to work does not constitute evidence of loss of earning capacity, see *Nisbet* v. *Medaglia*, 356 Mass. 580, 583 (1970), an expert witness, e.g., in this case a vocational expert, may not be necessary. "The assessment of damages for impairment of earning capacity rests largely on the common knowledge of the jury, sometimes with little aid from evidence." *Solimene* v. *B. Grauel & Co., KG*, 399 Mass. 790, 804 n.16 (1987), quoting from *Griffin* v. *General Motors Corp.*, 380 Mass. 362, 366 (1980). Compare *Mulcahey's Case*, 26 Mass. App. Ct. 1, 3 (1988) (Department of Industrial Accidents entitled to use its own judgment in determining earning capacity).

To be sure, there was contradictory evidence before the jury. For example, as the defendants point out, the doctor testified at his videotaped deposition that he had no record that the employee had complained of pain at any point, and that there would be no restrictions on the employee's "normal life activities." In response to specific inquiries, the doctor said the employee could drive a car, write, play golf if he were a golfer, and play softball but not baseball. In an office visit report dated October 27, 1997, the doctor wrote: "I feel [the employee] is ready to return to his job in the grocery, lifting tofu boxes among other commodities, and he is released for work as of Monday next." The jury could have disregarded this evidence given the doctor's apparent misunderstanding of the nature of the employee's work. Such judgments were for the jury to make.

The preceding analysis may be summarized as follows. The jury found that the president was negligent, that the employee was incapacitated for work for an "indefinite period of time," and that his incapacity was total. The jury had been instructed as to negligence, partial and total disability, and temporary versus permanent disability, including the clarifications the president requested. The form on which they were to record their findings did not reveal that the questions on those issues were advisory. Although not overwhelming and subject to

alternative interpretations, there was sufficient evidence to support the jury's findings. See Locke, Workmen's Compensation § 344, at 405-406 (complete physical and mental incapacity not essential to proof of total and permanent disability; sufficient if evidence shows disability prevents work of substantial and not merely trifling character with due regard for age, experience, training, and capabilities). The motion for directed verdict should not have been granted.

The question then is: what is the legal significance of the jury's advisory findings? Here, where the defendants rested before the judge's ruling on the motion for directed verdict, given the jury's findings that the employee's incapacity was total and indefinite, the remaining question of damages is a question of law. See G. L. c. 152, §§ 34, 34A. (Having not introduced evidence as to when § 34A benefits should begin, we think the employee in this case is subject to exhausting his § 34 benefits, compare *Slater's Case*, 55 Mass. App. Ct. 326 [2002], before being eligible for § 34A benefits, as set out in his posttrial motion for entry of judgment.) We therefore remand the employee's claim against the president for assessment of damages by the trial judge.

3. *Double recovery.* The employee claims he is entitled to collect damages from the president as well as the corporation. The president argues to the contrary. The issue did not arise in *LaClair* v. *Silberline Mfg. Co.*, *supra*, because that corporate employer was insolvent. We think it reasonably clear that an employee may bring an action and seek a judgment from both. Cf. 452 Code Mass. Regs. § 3.04 (1997) (employee of any uninsured employer entitled, without election and through the Workers' Compensation Trust Fund, see G. L. c. 152, § 65, to the weekly compensation and other medical and vocational rehabilitation benefits provided under G. L. c. 152; claimant may also proceed to enforce the liability of an uninsured employer under G. L. c. 152, §§ 66, 67). The question is whether the employee may execute judgment against both.

In *Brown* v. *Leighton*, 385 Mass. 757 (1982), the uninsured defendant-employer argued that it was entitled to credit for damages the employee had recovered from a third party unrelated to the employer. On the facts of that case, the

employer was not entitled to such credit. *Id.* at 758. The court in *Brown* v. *Leighton, supra,* noted that the purpose of the workers' compensation program is to ensure prompt payment for injuries in the workplace. *Id.* at 763. When there is no insurance, that purpose goes unfulfilled. The employee has litigation options, but they are not prompt. Nor are they reliable or without cost. The employee must assume the responsibility and risk of suit, as well as the delay. *Ibid.* In *Brown* v. *Leighton, supra,* to have allowed the employer to take advantage of the third party recovery would have constituted a windfall to the benefit of an employer who failed to insure. *Id.* at 763. This rationale does not apply here because there is no recovery from a third party.

In this case, both the corporation and the president are in effect the employer. The employee is entitled to recover damages for which the employer has been determined to be liable and may elect which judgment to execute against first. The second defendant is not off the hook until the employee actually receives the payment due him. This is fair to the employee and prevents the employer from escaping its obligations, without resulting in a double recovery to the employee, which the Legislature has not seen fit to authorize. Cf. *LaClair* v. *Silberline Mfg. Co.,* 379 Mass. at 30 (limiting recovery against corporate officer who failed to insure to the amount the employee would have recovered had he been covered under G. L. c. 152 "given the absence of a statute establishing the measure of damages").

Finally, we reject the president's contention that the employee was required to pursue a claim against the Workers' Compensation Trust Fund, see G. L. c. 152, § 65, rather than against the corporate official. This argument was not presented in the Superior Court; it appears for the first time in the defendants' reply brief. It is therefore waived. See *Vassallo* v. *Baxter Healthcare Corp.,* 428 Mass. 1, 11 (1998). In any case, we have serious concerns about requiring an employee to file an administrative action whose success would deplete the Workers' Compensation Trust Fund and which would add to the employee's litigation burden.

The judgment against the corporation is affirmed. The judgment for the president is reversed. The claim against the

president is remanded to the Superior Court for action consistent with this opinion.

*So ordered.*