ALFRED ROBERGE'S CASE.

Suffolk.    October 8, 1953. — November 5, 1953.

Present: QUA, C.J., LUMMUS, RONAN, SPALDING, & WILLIAMS, JJ.

*Workmen's Compensation Act*, Specific compensation. *Statute*, Construction. *Words*, "Fingers."

A statute is not to be interpreted so as to require a radical change in established public policy if the language of the statute does not disclose an intent to effect such change. [509]

The word "fingers" in G. L. (Ter. Ed.) c. 152, § 36 (r), as appearing in St. 1949, c. 519, includes a thumb and any part of a finger or thumb. [510]

If an employee suffered a functional loss from the amputation of the tip of his thumb and loss of part of the bone of the terminal phalange through an industrial accident, he was entitled under G. L. (Ter. Ed.) c. 152, § 36 (r), as appearing in St. 1949, c. 519, to specific compensation in an amount having the same proportion to the amount payable for total loss or total loss of use of the hand as the proportion which the functional loss due to such amputation had to functional loss of the entire hand; it was error to award specific compensation as if the entire terminal phalange of the thumb had been lost even though it was the practice of the Industrial Accident Board to do so where any part of the bone of the phalange had been lost. [510]

CERTIFICATION to the Superior Court of a decision by the Industrial Accident Board under the workmen's compensation act.

The case was heard by *Brogna*, J.

In this court the case was submitted on briefs.

*John T. Burke*, for the insurer.

*Joseph H. Lewis*, for the claimant.

WILLIAMS, J. The insurer appeals from that part of a decree of the Superior Court which awarded specific compensation under G. L. (Ter. Ed.) c. 152, § 36 (r), as appearing in St. 1949, c. 519. The employee was injured in January, 1952, while working as a carpenter, by catching the thumb of his right or major hand in the knives of a planing machine. As a consequence, the tip of his thumb was amputated and he lost about three sixteenths of an inch of the bone of the terminal phalange. He was out of work a little over two weeks. The medical testimony negatived any loss of function and there was no finding of such loss by the single member of the Industrial Accident Board who heard the case. In his findings he stated, "It has been the practice of the Industrial Accident Board to award specific compensation for the entire phalange when any part of the bone has been amputated either traumatically or by operation as the result of an industrial accident. In accordance with this practice, I find and rule that the employee, under § 36 (r), is entitled to specific compensation for the distal phalange of his right thumb. The insurance company is ordered to pay him specific compensation for 33.75 weeks

at $20 a week, or a total of $675." The reviewing board affirmed and adopted the decision of the single member and the Superior Court entered a decree in accordance therewith.

It is the contention of the insurer that § 36 (r) does not provide for the award of specific compensation where only a portion of the phalange has been lost by severance. Section 36 now reads as follows: "In case of the following specified injuries the sum of twenty dollars a week shall be paid, in addition to all other compensation, for the following periods: . . . (r) If the fingers, toes or other parts of the hand or foot have been severed or permanently rendered incapable of use, such period of weeks in proportion to the period applicable in the event of total loss or total loss of use of said hand or foot as the functional loss arising out of said severed or inutile part of said hand or foot bears to the total loss or loss of use of the same." Statute 1949, c. 519, was a complete revision of G. L. (Ter. Ed.) c. 152, § 36, as amended. As the section appeared in the original workmen's compensation act, St. 1911, c. 751, Part II, § 11, it provided compensation in (d) "For the loss by severance of at least one phalange of a finger, thumb, or toe," and in (c) "For the loss by severance at or above the second joint of two or more fingers, including thumbs, or toes."

Section 11 was amended by St. 1913, c. 445, which added subsection (e) providing that when the "hand, foot, thumb, finger or toe is not lost but is so injured as to be incapable of use," the same compensation shall be paid as if lost. By St. 1913, c. 696, § 1, the word "permanently" was inserted before the word "incapable." Section 11 thus amended appeared in G. L. c. 152, as § 36 (c), (d), and (e). Previous to the present revision § 36 had been amended by St. 1928, c. 356, St. 1930, c. 336, St. 1933, c. 257, St. 1935, c. 333, St. 1946, c. 386, § 1, St. 1947, c. 634, §§ 1-3, and St. 1947, c. 664, § 1. The general effect of these amendments was to augment by exact description the various losses by severance which were compensable and also to increase the amounts to be awarded as specific compensation. Different amounts of compensation were specified for losses of particular

phalanges and combinations of phalanges, losses to the major hand being distinguished from losses to the minor hand. Compensation was not provided in terms for loss of fingers or thumbs but was provided indirectly through the award of compensation for loss of the constituent phalanges. The present statute revises the mode of describing the losses by severance which are to be compensated and establishes a new method of computing specific compensation. It makes no direct reference to thumbs or phalanges but classifies all compensable losses by severance to hands and feet under the general description "fingers, toes or other parts of the hand or foot."

It is contended that under this description there is no provision for compensation in case of the loss of only a part of a finger as fingers are only mentioned as entities and the words "other parts of the hand" refer to parts other than fingers.

We cannot believe that the use of the general term "fingers" indicates a legislative intent to abandon specific compensation for loss by severance of their parts. Statutes are not to be interpreted so as to require a radical change in established public policy if the language does not manifest an intent that such change is to be effected. *Dexter* v. *Commissioner of Corporations & Taxation*, 316 Mass. 31, 37-38. The history of workmen's compensation in this Commonwealth shows that the Legislature gradually but consistently has enlarged the scope of the laws pertaining to it and that the courts have construed them liberally for the protection of the injured employee. *Meley's Case*, 219 Mass. 136, 139. *Schenck's Case*, 293 Mass. 526, 529. No reason occurs to us which would account for an intentional elimination of the loss of parts of a finger as a basis for compensation. It is to be noted that apart from fingers compensation is provided for loss by severance of all other portions of the hand.

The change in statutory phraseology may perhaps be due to the adoption of the new method for determining the amounts of compensation. Previous to 1949 definite

amounts were awarded to compensate for specifically described losses. In order accurately to describe the losses which were to be so compensated it was convenient, if not necessary, to describe the severed portions by reference to the phalanges, which could easily be identified. Phalanges, therefore, became the recognized units on which the awards of compensation were based. Under the present statute compensation is awarded according to the proportion which the functional loss of the severed part bears to the total functional loss of the hand and there is no longer occasion for specifying the phalange as the unit of loss in determining compensation.

In using the word "fingers" we think the Legislature intended to provide that compensation should be awarded for the loss by severance of any digit of the hand, including the thumb, and any part of a finger or thumb. The word should be construed so as to effect this intent. *Lehan* v. *North Main Street Garage, Inc.* 312 Mass. 547, 550. Such construction does no violence to its ordinary meaning and serves to harmonize the statute with other previous enactments in the development of the compensation law. See *Commonwealth* v. *Welosky,* 276 Mass. 398, 401–402.

Provided that the employee suffered a functional loss from the amputation of a portion of his thumb he is entitled to compensation.

It was error to award compensation as if the entire terminal phalange had been lost. It was the duty of the Industrial Accident Board to decide what compensation was appropriate to the actual loss which had been suffered by the employee. The practice of the board, by which apparently the single member and the reviewing board were guided, could not change the meaning of the statute. Under the revision of 1949 an employee is entitled to compensation for the loss of the major hand in the sum of $20 for 125 weeks, or $2,500. In the instant case the employee is entitled to the proportion of that sum which the functional loss of three sixteenths of an inch of the distal phalange of the thumb bears to the functional loss of the entire hand.

*Boynton's Case,* 328 Mass. 145. This is a question of fact which must be determined by the Industrial Accident Board. The decree of the Superior Court is reversed. A decree is to be entered providing for the recommittal of the case to the Industrial Accident Board to make necessary findings of fact and to render a decision in conformity with this opinion.

*So ordered.*