CNA INSURANCE COMPANIES *vs.* JAMES SLISKI.

Hampden. December 4, 2000. - March 15, 2001.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, & SOSMAN, JJ.

*Workers' Compensation Act,* Double compensation, Serious and wilful misconduct of employer, Insurer. *Statute,* Construction. *Public Policy.*

Discussion of the double compensation provisions of G. L. c. 152, § 28, applicable to circumstances in which an employee is injured due to serious and wilful misconduct by the employer. [493-495]

This court concluded that the purpose of the provisions of G. L. c. 152, § 28, is not to punish employers but to compensate employees [495], and in circumstances in which an employer's insolvency prevents the repayment to the insurer of extra (double) compensation payable to the employee under that section, the purpose of the workers' compensation laws is properly effectuated by placing the risk of such insolvency on the insurer and not the injured employee [495-499]. SPINA, J., dissenting, with whom IRELAND, J., joined.

CIVIL ACTION commenced in the Superior Court Department on June 18, 1993.

The case was heard by *C. Brian McDonald*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*John F. Burke, Jr.*, for the plaintiff.

*Paul F. Schneider* (*Charles R. Casartello, Jr.*, with him) for the defendant.

MARSHALL, C.J. In this declaratory judgment action, CNA Insurance Companies (CNA) seeks to establish that it is not responsible to an injured worker for payment of double compensation under G. L. c. 152, § 28, of the workers' compensation act (act) for the alleged serious and wilful misconduct of the worker's employer because the employer is

insolvent and unable to repay CNA as provided in the statute.[1] A judge in the Superior Court concluded that CNA must pay the double compensation and entered a final declaratory judgment to that effect. CNA appealed and we transferred the case to this court on our own motion. We affirm the judgment.

1. On June 9, 1988, when James Sliski was eighteen years old, he fell through an elevator shaft at work and suffered spinal injuries that left him a paraplegic. At the time of his injuries, Sliski was employed by Doane & Williams, Inc. (Doane & Williams), which was insured by CNA. CNA accepted liability for Sliski's injury and commenced payment of weekly workers' compensation benefits pursuant to G. L. c. 152, § 34.[2]

Sliski alleged that his injuries were the result of serious and wilful misconduct by Doane & Williams, and on March 23, 1989, he filed with the Department of Industrial Accidents (department) a claim for double compensation pursuant to G. L. c. 152, § 28. Notice of the claim was given to both CNA and Doane & Williams, but the record does not indicate what, if any, action was taken on that claim. In 1991, Doane & Williams ceased to do business, and its assets were sold in lieu of foreclosure by a secured creditor. On June 2, 1992, Sliski re-filed his claim for double compensation. CNA filed a denial of the refiled claim on June 5, 1992, and subsequently filed with the department a motion to dismiss, raising the statute of limitations and laches as defenses, and claiming that it was not liable for payment of double compensation to Sliski because its insured had become insolvent. An administrative judge in the department denied the motion on June 8, 1993. Sliski's § 28

---

[1]General Laws c. 152, § 28, provides in pertinent part: "If the employee is injured by reason of the serious and wilful misconduct of an employer . . . the amounts of compensation hereinafter provided shall be doubled. In case the employer is insured, he shall repay to the insurer the extra compensation paid to the employee."

[2]General Laws c. 152, § 34, requires the workers' compensation insurer to pay an injured employee who has been totally incapacitated an amount "equal to sixty percent of his or her average weekly wage before the injury, but not more than the maximum weekly compensation rate, unless the average weekly wage of the employee is less than the minimum weekly compensation rate, in which case said weekly compensation shall be equal to his average weekly wage."

claim remains pending before the department and has been stayed pending the outcome of this action.

2. CNA argues that, because double compensation is available to an employee only on a showing of serious and wilful misconduct by the employer, the purpose of the provision is to punish the employer and to deter other employers from engaging in such misconduct. To require CNA to make such payments to Sliski with no possibility of repayment by Doane & Williams, it argues, defeats the punitive purpose of the statute, violates the public policy against providing insurance coverage for punitive damages, and violates its due process rights. It likens the § 28 double compensation to multiple damage awards for a wilful and knowing violation of G. L. c. 93A, §§ 9 and 11, which we have acknowledged are avowedly punitive. *Kapp* v. *Arbella Mut. Ins. Co.*, 426 Mass. 683, 686 (1998).

The language of the statute suggests that the purpose of § 28 is to benefit an injured worker, not to punish the employer, for it describes the double payments as "extra compensation." G. L. c. 152, § 28. See *Hoffman* v. *Howmedica, Inc.*, 373 Mass. 32, 37 (1977) (statutory language principal source of insight into legislative purpose). See also *Thayer's Case*, 345 Mass. 36, 43 (1962) ("extra or double award which enures to the benefit of the injured employee under § 28 constitutes, in our opinion, compensation as that term is used in the [act]"). In *Boardman's Case*, 365 Mass. 185, 193 (1974), this court noted in passing that the doubling provision of § 28 "may have a punitive aspect." But we were not asked in that case to decide whether § 28 was punitive, and any suggestion to that effect does not reflect the legislative intent as evidenced by the legislative history that we discuss below.

We have long recognized that the workers' compensation statute was enacted as a "humanitarian measure" in response to strong public sentiment that the remedies afforded by actions of tort at common law did not provide adequate protection to workers who were the victims of industrial accidents. *Young* v. *Duncan*, 218 Mass. 346, 349 (1914). *LaClair* v. *Silberline Mfg. Co.*, 379 Mass. 21, 27 (1979). We have stressed that the statute should be given a broad interpretation, viewed in light of that purpose. *Roberge's Case*, 330 Mass. 506, 509 (1953). Against

that general background we turn to the legislative history of § 28.

Section 28 has existed in essentially the same form since the statute was first enacted in 1911. See St. 1911, c. 751, Part II, § 3.[3] Prior to enactment in 1911, the Commission on Compensation for Industrial Accidents submitted a report to the Legislature describing the nature of the proposed new workers' compensation laws, stating they were "not intended to be punitive *in any sense*, but [were] founded on the principle that the whole community for which production is carried on should bear the burden of all the costs of production" (emphasis added). 1911 House Doc. No. 300, at 2-3.

Then, in 1912, the Massachusetts Commission on Compensation for Industrial Accidents again submitted a report to the Legislature describing the history of the legislation, and providing a commentary on the new act. See Report of the Massachusetts Commission on Compensation for Industrial Accidents (July 1, 1912) (unnumbered). See also *Ferriter v. Daniel O'Connell's Sons*, 381 Mass. 501, 519-525 n.21 (1980). Commenting specifically on what is now § 28, the commission noted that this section "grants double compensation for injuries occasioned by the serious and wilful misconduct of the employer," adding that the provision was made because the commission "thought it equitable to provide a double compensation for the injuries occasioned by serious and wilful misconduct of the employer." Report of the Massachusetts Commission on Compensation for Industrial Accidents, *supra* at 48. There is no hint of any punitive intent. Rather, the sole focus was on the equitable compensation of injured workers. We recognize, as does the dissent, that the award of double compensation is determined "by the character of the employer's conduct." *Post* at 499. A worker who is injured by the "serious and wilful misconduct" of an employer must forgo the recovery of tort damages that would likely be far more substantial and a

---

[3]The first version of the payment of double compensation provided, in pertinent part: "If the employee is injured by reason of the serious and wilful misconduct of a subscriber . . . the amounts of compensation hereinafter provided shall be doubled. In such case the subscriber shall repay to the association the extra compensation paid to the employee." St. 1911, c. 751, Part II, § 3.

common-law claim with a greater likelihood of success than his recovery or claim could be for injuries resulting from an employer's mere negligent conduct. The Legislature could, and in our judgment did, conclude that it would be equitable to award such a worker double compensation in recognition of the greater value of the common-law claim given up. These were not punitive damages by some other name. See *post* at 500.

In light of this unambiguous history, we conclude that the purpose of § 28 has never been punitive. See *Assessors of Newton* v. *Pickwick Ltd.*, 351 Mass. 621, 625 (1967) ("a construction [of a statute which] would completely negate legislative intent . . . is to be avoided"). One respected commentator has reached the same conclusion:

> "The double compensation paid the employee where the injury is the result of the employer's serious and wilful misconduct is not . . . a 'penalty.' It is compensation, in the generic sense, encompassing all monetary payments under the act. Proceedings under [§] 28, therefore, should be subject to the general rule of liberal construction applicable to other cases under the act . . . ."

L. Locke, Workmen's Compensation § 286, at 327 (2d ed. 1981). Because we conclude that § 28 is not punitive, we need not consider CNA's due process claim that rests on such an assumption. For the same reason, there is no merit to CNA's argument that it would be against public policy to require CNA to pay "punitive" damages targeted at the employer. Public policy, as articulated by the Legislature, clearly places on CNA the obligation to pay this double compensation, however it is characterized.

3. Our conclusion that § 28 double compensation is not punitive does not end our inquiry, for we still must decide whether the risk of an employer's insolvency should be borne by the insurer or by the injured employee. Both CNA and Sliski argue that the language of the statute compels the result each seeks. But resort to that familiar rule of construction sheds little light here. The statute unambiguously mandates double payment to the injured employee by the insurer if the employer is insured. See *West's Case*, 313 Mass. 146, 154 (1943) (under § 28, claim for double compensation "in the first instance is to be paid by

the insurer"). See also L. Locke, Workmen's Compensation, *supra* at § 289, at 341. However, the statute then provides that the employer "shall repay to the insurer the extra compensation paid to the employee." G. L. c. 152, § 28.

CNA asserts that the statute "clearly places the ultimate responsibility of making the § 28 payment on the employer and not the insurer." But the text of § 28 does not mandate that result: it is silent as to the allocation of risk where the employer itself is insolvent.[4] The legislative scheme as a whole, and the legislative history of the specific provision at issue, however, suggest a resolution. The purpose of the workers' compensation laws in general, and § 28 in particular, is properly effectuated by placing the risk of the employer's insolvency on the insurer, and not the injured employee.

"The history of workmen's compensation in this Commonwealth shows that the Legislature gradually but consistently has enlarged the scope of the laws pertaining to it, and that the courts have construed those laws liberally for the protection of the injured employee." *Roberge's Case*, 330 Mass. 506, 509 (1953), and cases cited. To this end, in *LaClair* v. *Silberline Mfg. Co.*, 379 Mass. 21 (1979), we recognized a common-law right against the individual officers of an insolvent company for negligent failure to procure workers' compensation insurance. We noted that insolvency "is a risk of the free enterprise system, and that the penalties should not be assessed on disabled employees," who are entitled to full compensation, even though their employer suffered bankruptcy.[5] *Id.* at 29-30 n.11. For much the same reason we discern that the Legislature did not intend that a worker who suffers a catastrophic injury because of the serious and wilful misconduct of his employer should bear the

---

[4]We agree with the dissent that the Legislature intended the insurer to be reimbursed by the employer. See *post* at 499, citing *Burke* v. *Atlantic Research Corp.*, 358 Mass. 764, 766 (1971). But that does not determine what the Legislature intended where the employer is insolvent and unable to reimburse the insurer. We acknowledged as much in *Burke, supra* at 766, where we observed that, because there was "nothing in the record to indicate that the employer would be unable to reimburse the insurer for possible extra compensation," the insurer stood "to suffer no loss from the plaintiff's case." *Burke* left open the question we are now asked to resolve.

[5]CNA points to no law where existence of a right of indemnification relieves one of liability merely because the indemnitor is insolvent.

brunt of the employer's insolvency. See *Armstrong's Case,* 416 Mass. 796, 801 n.9 (1994) ("We think it probable, therefore, that the reference to compensation in § 28 also contemplates benefits paid by the insurer"). See also *Boardman's Case,* 365 Mass. 185, 193 (1974), where we observed that double compensation is a "tacit acknowledgment" that the act "ordinarily affords the employee rather slim recovery, which deserves to be increased down the line when the employer is conceived to be seriously at fault."[6]

Unlike some other States, the Massachusetts statute makes no provision insulating insurance carriers from payment of double compensation.[7] In recent years our Legislature has enacted significant revisions to the workers' compensation statute. See, e.g., St. 1991, c. 398; St. 1985, c. 572. Had the Legislature

---

[6]CNA asserts that the "slim" recovery under the act referred to in our cases is no longer relevant, because the amounts of compensation awarded were increased by the Legislature in 1985. See generally St. 1985, c. 572. However, the recovery that an injured employee can expect under the act is still "slim" when compared to the recovery that one could expect from a successful tort action. Workers' compensation law, unlike tort law, does not seek to make an injured worker whole; workers generally recover only partial lost wages, and cannot recover for pain and suffering. See Haas, On Reintegrating Workers' Compensation and Employers' Liability, 21 Ga. L. Rev. 843, 846-847 (1987) (noting tort judgments substantially higher than workers' compensation awards). In any event we look to the purpose of the statute when enacted, not later circumstances that may change.

[7]Cf., e.g., Fla. Stat. Ann. § 440.54 (West 1991) ("The employer alone, and not the insurance carrier, shall be liable for the increased compensation or increased death benefits provided for by this section"); Ind. Code Ann. § 22-3-6-1(c)(2) (Michie 1997 & Supp. 2000) ("the amount of compensation and death benefits, as provided in IC 22-3-2 through IC 22-3-6, shall be double the amount which would otherwise be recoverable. The insurance carrier shall be liable on its policy for one-half [½] of the compensation or benefits that may be payable on account of the injury or death of the minor, and the employer shall be liable for the other one-half [½] of the compensation or benefits"); Miss. Code Ann. § 71-3-107 (2000) ("[t]he employer alone and not the insurance carrier shall be liable for such increased compensation or increased death benefits"); N.J. Stat. Ann. § 34:15-39.3 (West 2000) ("The employer alone and not his insurance carrier shall be liable for any penalty under this act"); N.Y. Work. Comp. Law § 14-a(2) (McKinney 1992 & Supp. 2001) ("The employer alone and not the insurance carrier shall be liable for the increased compensation, increased death benefits, or awards to the commissioner of taxation and finance provided for by this section. Any provision in an insurance policy undertaking to relieve an employer from such increased liability shall be void").

intended to accomplish the result sought here by CNA, it could readily have made such a provision explicit. For example, the Legislature, in 1985, established for the first time a trust fund through which an injured employee, whose employer had illegally failed to obtain workers' compensation insurance, could be compensated. See G. L. c. 152, § 65 (2) (*e*), as appearing in St. 1985, c. 572, § 55. There was no explicit limitation on the compensation available to the injured worker from the trust fund, including double compensation for a worker injured by the serious and wilful misconduct of an uninsured employer. *Id.* In 1991, in response to a growing concern that the trust fund was seriously underfunded,[8] the Legislature amended the statute to provide explicitly that the statutory fund (and only the fund) would no longer be responsible for double compensation provided under § 28.[9] G. L. c. 152, § 65 (2) (*e*), as appearing in St. 1991, c. 398, § 85. See generally 452 Code Mass. Regs. § 3.04 (1997). It is argued that when, in 1991, the Legislature specified that § 28 benefits were not payable from the trust fund, it must have intended to prohibit payment of double compensation by all insurers who would not be reimbursed by their insured, such as CNA. But it is a familiar principle of

---

[8]When the trust fund was established in 1985, the department anticipated that it would receive approximately ten to twenty claims each year from injured employees of uninsured employers. See L. Locke, Workmen's Compensation § 13.1, at 377 (Koziol Supp. 2000). By the fall of 1987, the department was receiving fifteen to twenty claims a week. *Id.* In 1988, the trust fund paid out $1.7 million for uninsured workers. In 1989, that cost almost doubled to $3.1 million. See More and More, Employers Flout the Insurance Laws, The Boston Globe, Aug. 5, 1990, at A1. In response to these unanticipated and increasing costs, in 1991 the Legislature "narrowed the Trust Fund's obligations to pay benefits to employees of uninsured employers and vested the fund with several tools aimed at . . . controlling its expenditures." See L. Locke, Workmen's Compensation § 3.3, at 41 (Koziol Supp. 2000). The 1991 amendment that prohibited payment of § 28 double compensation by the trust fund was part of this cost-cutting legislative package. St. 1991, c. 398, § 85.

[9]General Laws c. 152, § 65 (2) (*e*), as appearing in St. 1991, c. 398, § 85, states in pertinent part: "There is hereby established a trust fund in the state treasury, known as the Workers' Compensation Trust Fund, the proceeds of which shall be used to pay . . . the following compensation: . . . (*e*) payment of benefits resulting from approved claims against employers subject to the personal jurisdiction of the commonwealth who are uninsured in violation of this chapter; provided, however, that . . . (ii) no benefits pursuant to [§ 28] and no interest pursuant to [§ 50] shall be payable out of the trust fund."

statutory interpretation that express mention of one matter excludes other similar matters not mentioned. *Spence, Bryson, Inc.* v. *China Prods. Co.*, 308 Mass. 81, 88 (1941). The Legislature has determined that only the trust fund is not responsible for payment of double compensation to an injured worker whose employer is insolvent.

*Judgment affirmed.*

SPINA, J. (dissenting, with whom Ireland, J., joins). I respectfully dissent. In my view, an award of compensation under G. L. c. 152, § 28, is punitive, or exemplary, in nature. Although it inures to the benefit of the party injured, that is generally true of all punitive damages awards. The award is not determined by the injury to the employee, except indirectly; it is determined by the character of the employer's conduct. See Restatement (Second) of Torts § 908 (1979). We have said that "serious and wilful misconduct" under § 28 "is much more than mere negligence, or even than gross or culpable negligence. It involves conduct of a quasi criminal nature, the intentional doing of something either with the knowledge that it is likely to result in serious injury or with a wanton and reckless disregard of its probable consequences." *Thayer's Case*, 345 Mass. 36, 39-40 (1962), quoting *Scaia's Case*, 320 Mass. 432, 433-434 (1946).

A claim under § 28 is generally not included in the agreement for compensation. See *West's Case*, 313 Mass. 146, 154 (1943). The real party in interest is the employer, not the insurer, and § 28 permits the employer to "appear and defend against such claim only." See *Thayer's Case, supra* at 44; *West's Case, supra.* The insurer's involvement is purely administrative, as the Legislature intended the insurer to be reimbursed by the employer. See *Burke* v. *Atlantic Research Corp.*, 358 Mass. 764, 766 (1971) (no conflict of interest between insurer and employee in third-party action brought by insurer in employee's name, pursuant to G. L. c. 152, § 15, where insurer is also defending against employee's § 28 claim, because "the insurer stands to suffer no loss from the plaintiff's claim" under § 28).

Punitive damages, by any other name, are still punitive damages. I would reverse the judgment.