Joseph V. McDonough's (dependent's) Case.

Suffolk. October 4, 2006. - December 22, 2006.

Present: Marshall, C.J., Greaney, Ireland, Spina, Cowin, Sosman, & Cordy, JJ.

*Workers' Compensation Act,* Decision of Industrial Accident Reviewing Board,
   Right to compensation, Dependency compensation.

This court concluded that the surviving spouse of a decedent who had no
   actual wages at the date of eligibility for workers' compensation, G. L.
   c. 152, § 35C, could nevertheless receive the minimum benefit under G. L.
   c. 152, § 31, where the wording of the second paragraph of § 31 was
   clear that no circumstance or condition would operate to deprive the
   surviving spouse of the minimum benefit. [81-84]

Appeal from a decision of the Industrial Accident Reviewing
Board.

The Supreme Judicial Court granted an application for direct
appellate review.

*Richard W. Jensen* for the insurer.

*Franklin Lewenberg* for the claimant.

Sosman, J. In this appeal, we are called on to decide a question
left open when we previously considered this case, *McDonough's
Case,* 440 Mass. 603, 608 n.6 (2003) (*McDonough I*), namely,
whether a surviving spouse of a decedent who had no actual
wages at the date of eligibility, G. L. c. 152, § 35C, could
nevertheless receive the minimum benefit under G. L. c. 152,
§ 31.[1] The insurer, Liberty Mutual Insurance Company (Liberty

---

[1] General Laws c. 152, § 31, provides, in pertinent part:

   "If death results from the injury, the insurer shall pay the following
   dependents of the employee, . . . wholly dependent upon his or her
   earnings for support at the time of his or her injury or at the time of his
   or her death, compensation as follows . . . .

   "To the widow or widower, so long as he or she remains unmarried,
   a weekly compensation equal to two-thirds of the average weekly
   wages of the deceased employee, but not more than the average weekly

Mutual), appeals from the decision of the reviewing board (board) of the Department of Industrial Accidents awarding the minimum benefit to the claimant.[2] For the following reasons, we conclude that the claimant is entitled to the minimum § 31 benefit, and therefore, we affirm the decision of the board.

1. *Background.* Joseph McDonough began working for the Boston Edison Company in 1961 as a mechanic, primarily in its Massachusetts Avenue garage. He retired from that position in December, 1991, accepting a lump sum pension payment. In April, 1996, he was diagnosed with adenocarcinoma and asbestosis. He passed away the following month. His widow, the claimant Martha McDonough, sought benefits under G. L. c. 152, including medical expenses under §§ 13 and 30, burial expenses under § 33, and survivor's benefits under § 31. After hearing, an administrative judge found that McDonough's illness had been caused by exposure to asbestos fibers at his workplace, and that that exposure to asbestos occurred between the start of his employment in 1961 and December, 1978. (After December, 1978, testing conducted by the Occupational Safety and Health Administration found no asbestos fibers remaining in the garage.) As a result, McDonough's date of injury for purposes of workers' compensation was December, 1978. See *McDonough I, supra* at 605, citing *Squillante's Case*, 389 Mass. 396, 397 (1983) (in case of latent injury, date of injury is date of last exposure). As of that date of injury, McDonough was married to and living with the claimant. Under § 35C, where five years or more have elapsed between the date of injury and the date on which the worker or survivor first became eligible for benefits, "the applicable benefits shall be those in effect on the first date of eligibility for benefits." Here, that date of eligibility was May 10, 1996, the date of McDonough's death.

---

wage in the commonwealth . . . ; provided, however, that in no instance shall said widow or widower, receive less than one hundred and ten dollars per week . . . ."

[2]Counsel for the claimant has filed a suggestion of death and moved that Mary A. Noonan, administratrix of the claimant's estate, be substituted as the claimant in this matter. We take notice of the suggestion of death, and we allow the motion to substitute. We refer to the original claimant, Martha McDonough, throughout this opinion.

As of that date, McDonough and the claimant were still married and living together.

The board awarded the claimant benefits under §§ 13, 30, 31, and 33. With respect to the calculation of benefits under § 31, the board resorted to 452 Code Mass. Regs. § 3.02(1) (1999), which provided that if the worker was not employed as of the date of eligibility, benefits should be calculated based on the worker's earnings as of the last date of employment. Under § 31, the claimant was thus awarded two-thirds of McDonough's average weekly wage as of the date he retired in 1991. Liberty Mutual appealed the award of benefits under § 31.

In *McDonough I, supra* at 606, we held that because McDonough had no weekly wage on the date of eligibility for benefits under § 31, the calculation resulted in no payment to the claimant — two-thirds of zero equals zero. To the extent that the regulation, 452 Code Mass. Regs. § 3.02(1), provided otherwise, we held that it was invalid as contrary to the statute. *McDonough I, supra* at 607-608. However, we remanded the case to the board to consider whether, notwithstanding the absence of a weekly wage on the date of eligibility, the claimant was entitled to the minimum payment described in § 31 ("in no instance shall said widow or widower, receive less than one hundred and ten dollars per week"). *Id.* at 608 n.6.

On remand, the board concluded that the claimant was entitled to that minimum benefit. Liberty Mutual appealed to a single justice of the Appeals Court, who reported the case to the full panel of that court. We transferred the case from the Appeals Court on our own motion in order to consider whether the minimum benefit described in § 31 is available even when the average weekly wage at the time of eligibility is zero. We conclude that it is, and we affirm the board's decision to that effect.

2. *Discussion.* When reviewing the board's decision we give "due weight to the experience, technical competence, and specialized knowledge" of the agency. G. L. c. 30A, § 14 (7). We exercise de novo review of questions of statutory construction, however, and we must overturn agency decisions that are not consistent with governing law. See *Atlanticare Med. Ctr.* v. *Commissioner of the Div. of Med. Assistance*, 439 Mass. 1, 6

(2003); *Plymouth* v. *Civil Serv. Comm'n*, 426 Mass. 1, 5 (1997). In this case, we agree with the board's interpretation of G. L. c. 152, § 31.

The first paragraph of § 31 provides that "[i]f death results from the injury, the insurer shall pay the following dependents of the employee, . . . wholly dependent upon his or her earnings for support at the time of his or her injury, or at the time of his or her death." Among the listed dependents are "the widow or widower, so long as he or she remains unmarried." *Id.* Here, the claimant was married to and living with McDonough on the date of injury, December, 1978. There is no dispute that she was wholly dependent on his earnings at that time.[3] As she was dependent on McDonough's earnings at the time of his injury, the claimant qualifies under the first paragraph of § 31 to receive benefits, which are calculated according to the second paragraph of the same section.

Liberty Mutual argues that because the claimant only became eligible for § 31 benefits upon McDonough's death, her dependence on McDonough's earnings at the time of his death is the only means by which she could qualify for § 31 benefits.

---

[3]By comparison, Liberty Mutual Insurance Company (Liberty Mutual) has consistently argued that, at the time of McDonough's death, the claimant was not "wholly dependent upon [McDonough's] earnings for support," G. L. c. 152, § 31, because McDonough had no "earnings" after his retirement in 1991. Section 32 of the workers' compensation act, G. L. c. 152, § 32, contains a conclusive presumption that a wife is "wholly dependent for support upon a deceased employee" when she lives with him at the time of his death. Notwithstanding the fact that the § 32 presumption does not include any presumption with respect to dependence on "earnings" (but only presumes that the spouse is dependent "for support"), we previously stated that it applied to the claimant. *McDonough's Case*, 440 Mass. 603, 605 n.2 (2003). In any event, Liberty Mutual has not contested that the claimant was "wholly dependent upon [McDonough's] earnings for support" back in 1978, when his workplace injury occurred. Although there was no explicit finding on the point, the evidence adduced at the hearing was that the claimant was born in 1929, and she dropped out of school in her sophomore year of high school. She worked in a bakery for nine years, ending her work there a few years after her marriage to McDonough in 1952. During her marriage, she raised at least two children, and she was unemployed at the time McDonough retired in 1991. There is no suggestion in this record that she held any gainful employment outside of the home during her marriage. The record certainly supports the inference that the claimant was "wholly dependent upon [McDonough's] earnings for support" back in 1978, when McDonough was injured, and Liberty Mutual does not claim otherwise.

We disagree. The first paragraph of the statute refers to those who are dependent on earnings of an employee at the time of death *or* at the time of injury. The claimant was dependent on McDonough's earnings at the time of his injury, although not at the time of his death (because he no longer had any earnings). Nothing in G. L. c. 152, § 35C, or our interpretation of § 35C in *McDonough I, supra,* affects the qualifications set forth in the first paragraph of § 31. Rather, § 35C sets the date of the average weekly wage to be used for the calculation of benefits under the second paragraph of § 31. *McDonough I, supra* at 605-606. As the claimant satisfies the prerequisites under the first paragraph of that section, we move on to the second paragraph to determine what amount she is entitled to receive.

The second paragraph of § 31 first provides for a benefit of two-thirds of the average weekly wage of the deceased employee. As explained in *McDonough I, supra* at 606, that calculation yields no benefits for the claimant, as McDonough had no earnings at the date of eligibility (his date of death). However, after prescribing the two-thirds average weekly wage as the amount of benefit to be paid, the second paragraph of § 31 sets forth a proviso that "*in no instance* shall said widow or widower, receive less than one hundred and ten dollars per week" (emphasis added). We interpret the words "in no instance" literally, meaning that no circumstance or condition will operate to deprive the surviving spouse of the minimum benefit. See *Rudenauer* v. *Zafiropoulos,* 445 Mass. 353, 358-359 (2005) (interpreting words "in no event" in statute of repose to foreclose possibility of any exception). Thus, the fact that McDonough had no earnings at the time of his death does not disqualify the claimant from receiving that minimum benefit.

Liberty Mutual argues that to award minimum weekly compensation when the employee had no weekly wage at the time of eligibility would violate the limited wage replacement goals of the workers' compensation act (act). See *McDonough I, supra* at 604; *Letteney's Case,* 429 Mass. 280, 282 (1999); *Ahmed's Case,* 278 Mass. 180, 183 (1932); *Corriveau* v. *Home Ins. Co.,* 43 Mass. App. Ct. 924, 926 (1997). Although we have frequently recognized that the primary goal of the act is wage replacement, certain portions of the act serve other purposes

beyond precise wage replacement. See, e.g., G. L. c. 152, § 28 (requiring double compensation when injury results from employer's "serious and wilful misconduct"); G. L. c. 152, § 33 (compensation for burial expenses); G. L. c. 152, § 34A (providing minimum benefits for permanent and total incapacity); G. L. c. 152, § 36 (providing compensation for disfigurement regardless of incapacity); G. L. c. 152, § 36A (designating payments to nondependent relatives, or to special fund, if no dependents exist). As such, the mere fact that our interpretation does not equate with a strict wage replacement scheme does not require us to deviate from the plain language of § 31. The minimum payments described in § 31 are not altered by considering their place in a larger statutory scheme that has the over-all goal of wage replacement. Although this particular exception may be at odds with that over-all goal, the wording of § 31 itself is clear that nothing is to prevent a surviving spouse from receiving at least the minimum benefit.[4]

The board correctly interpreted § 31 to require minimum payments even when there was no weekly wage on the date of eligibility. We therefore affirm the decision of the reviewing board ordering the minimum weekly payment of § 31 benefits.[5]

*So ordered.*

---

[4]We also note that, under G. L. c. 152, § 23, a spouse who claims any benefits under G. L. c. 152 loses the right to sue the employer for the wrongful death of the other spouse. See *McLaughlin* v. *Stackpole Fibers Co.*, 403 Mass. 360, 361-362 (1988). According a surviving spouse with a payment of $5,720 per year is modest compensation for the loss of that right.

[5]The claimant has requested and is entitled to reasonable attorney's fees and costs incurred in this appeal, pursuant to G. L. c. 152, §§ 12 (3) and 12A. See *Daly's Case*, 405 Mass. 33, 40-42 (1989). Within fourteen days of the date of rescript, she shall submit to this court a petition for fees and costs, with any appropriate supporting materials, as described in *Fabre* v. *Walton*, 441 Mass. 9, 10-11 (2004). Liberty Mutual will be given fourteen days thereafter to respond to the petition for fees and costs.