# MICHAEL SELLERS'S CASE.

Suffolk. October 8, 2008. - December 19, 2008.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, CORDY, & BOTSFORD, JJ.[1]

*Workers' Compensation Act,* Average weekly wages, Concurrent employment, Uninsured employer.

The reviewing board of the Department of Industrial Accidents properly concluded that the workers' compensation benefits for an employee who had suffered a work-related injury, resulting in total incapacity, while in the employ of an employer that had failed to obtain workers' compensation insurance were to be calculated based on the employee's combined wages from an insured employer and the uninsured employer, where precluding such an employee from receiving wage replacement benefits calculated on the basis of his concurrent employment because one of his employers failed to obtain workers' compensation insurance would be contrary to the purposes of the Workers' Compensation Act (act), G. L. c. 152, was not compelled by the statutory language, and would be inconsistent with the mandate of the definitional section of the act to consider the context in which the issue arose. [808-815]

APPEAL from a decision of the Industrial Accident Reviewing Board.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Paul H. Nugent* for the employee.

*David A. Guberman,* Assistant Attorney General, for Workers' Compensation Trust Fund.

*Mary Jane McKenna & J. Michael Conley,* for Massachusetts Academy of Trial Attorneys, amicus curiae, submitted a brief.

MARSHALL, C.J. In cases where the Workers' Compensation Trust Fund (trust fund)[2] is required to pay workers' compensa-

---

[1]Justice Greaney participated in the deliberation on this case prior to his retirement.

[2]The Workers' Compensation Trust Fund (trust fund) was established in 1985, St. 1985, c. 572, § 55, to provide, among other things, a source of payment for an employee who suffers a work-related injury while working for an

tion benefits because an employee suffers a work-related injury while in the employ of an employer who has failed to obtain workers' compensation insurance, should those benefits be based on the employee's total earnings, including concurrent wages earned from an insured employer, or based only on wages received from the uninsured employer? We conclude that the benefits should be based on the employee's total average weekly wage, whether received from an insured or uninsured employer.

1. *Background.* On September 1, 2001, Michael Sellers was assisting with the trimming of trees when a heavy tree limb fell on him, fracturing two of his vertebrae, lacerating his spinal cord, and leaving him a quadriplegic. Sellers, who was thirty-three years old at the time of his injury, is now permanently and totally incapacitated from working.

Sellers was injured while working for John Havlin Tree Service (Havlin), which, in violation of the Workers' Compensation Act (act), G. L. c. 152, did not carry workers' compensation insurance. See G. L. c. 152, § 25A.[3] He was concurrently employed by, and earned most of his income from, the Steve Miller Company (Miller), which was properly insured under the act.[4] Because Sellers's injury occurred while he was working for an uninsured employer, the trust fund, to which all Massachusetts employers subject to the act must contribute, is required to pay his workers' compensation benefits. G. L. c. 152, § 65 (2).[5] *Letteney's*

---

employer who does not have workers' compensation insurance in violation of the workers' compensation statutory scheme. See G. L. c. 152, § 65 (2) (*e*); *CNA Ins. Cos.* v. *Sliski*, 433 Mass. 491, 498 (2001).

[3]General Laws c. 152, § 25A, provides, in relevant part:

> "In order to promote the health, safety and welfare of employees, every employer *shall* provide for the payment to his employees of the compensation provided for by this chapter in the following manner: (1) By insurance with an insurer or by membership in a workers' compensation self-insurance group, established pursuant to the provisions of [G. L. c. 152, §§ 25E-25U], inclusive, or (2) Subject to the rules of the department, by obtaining from the department annually a license as a self-insurer . . ." (emphasis added).

[4]At the time of his injury, Sellers's weekly wages were, on average, $400 from Havlin and $700 from Miller.

[5]General Laws c. 152, § 65 (2), as appearing in St. 1991, c. 398, § 85, provides in pertinent part:

> "There is hereby established a trust fund in the state treasury, known

*Case*, 429 Mass. 280, 285 & n.3 (1999). Additionally, because Sellers's work-related injury left him totally and permanently disabled, he is entitled to "a weekly compensation of two-thirds of his average weekly wage before the injury." G. L. c. 152, § 34A.[6]

Following his injury, Sellers filed a claim for workers' compensation benefits with the Department of Industrial Accidents. An administrative judge held a conference between the parties pursuant to G. L. c. 152, § 10A,[7] and subsequently issued a conference order awarding Sellers temporary total incapacity benefits from the date of his injury calculated by considering only his average weekly wage from Havlin, the

as the Workers' Compensation Trust Fund, the proceeds of which shall be used to pay or reimburse the following compensation: . . . (*e*) payment of benefits resulting from approved claims against employers subject to the personal jurisdiction of the commonwealth who are uninsured in violation of this chapter . . . . Revenues for the . . . trust fund established herein shall be raised by an assessment on all employers subject to this chapter."

[6]General Laws c. 152, § 34A, provides:

"While the incapacity for work resulting from the injury is both permanent and total, the insurer shall pay to the injured employee, following payment of compensation provided in [G. L. c. 152, §§ 34-35], a weekly compensation equal to two-thirds of his average weekly wage before the injury, but not more than the maximum weekly compensation rate nor less than the minimum weekly compensation rate."

[7]General Laws c. 152, § 10A, provides in pertinent part:

"(1) On referral from the division of administration of a claim for compensation or a complaint for modification or discontinuance of benefits, said claim or complaint shall be immediately assigned to an administrative judge. Except where events beyond the control of the department make such scheduling impracticable, the administrative judge assigned to any case referred to the division of dispute resolution shall retain exclusive jurisdiction over the matter and any subsequent claim or complaint related to the alleged injury shall be referred to the same administrative judge. The administrative judge shall require the parties to appear before him for a conference within twenty-eight days of receipt of the case by the division of dispute resolution. The administrative judge may require and receive reports of injury, signed statements of the employee and any witnesses, medical, hospital, and rehabilitation records, and other written and oral matter. At the conference, the parties shall identify the issues in dispute and they shall produce a summary of any anticipated testimony."

uninsured employer. G. L. c. 152, § 34.[8] Both Sellers and the
trust fund appealed.[9] G. L. c. 152, § 10A (3).[10] At a de novo
hearing before the same judge, *id.*, the parties stipulated that,
for purposes of receiving workers' compensation benefits,
Sellers's injuries had left him permanently and totally disabled,
and agreed that the sole issue remaining for consideration was
the determination of Sellers's average weekly wage.[11] The judge
then reached a different conclusion, ruling that the trust fund
must pay Sellers permanent total incapacity benefits calculated
by considering his average weekly wage from both employers,
Havlin and Miller. She also awarded Sellers his attorney's fees.
See G. L. c. 152, § 13A (2).[12]

The trust fund took an appeal to the reviewing board (board).
Citing, among other things, the lack of a "policy or rationale to
justify an interpretation" that "would deprive the employee the
benefit of his concurrent earnings," the board affirmed the deci-
sion of the administrative judge. The trust fund appealed. The
Appeals Court reversed, stating that, because of the definition
of "average weekly wages" contained in the act, it was

---

[8]General Laws c. 152, § 34, provides in pertinent part: "While the incapac-
ity for work resulting from the injury is total, during each week of incapacity
the insurer shall pay the injured employee compensation equal to sixty percent
of his or her average weekly wage before the injury . . . ."

[9]The reason for the trust fund's appeal is unclear from the record.

[10]General Laws c. 152, § 10A (3), provides: "Any party aggrieved by an
order of an administrative judge shall have fourteen days from the filing date
of such order within which to file an appeal for a hearing pursuant to [G. L.
c. 152, § 11]. Such hearing shall be held within twenty-eight days of the
department's receipt of such appeal."

[11]The parties framed the issue as "[w]hether the determination of the
employee's average weekly wage should consider concurrent earnings from
the insured concurrent employer, or only the earnings from the uninsured
employer?"

[12]General Laws c. 152, § 13A (2), provides in pertinent part:

> "Whenever an insurer contests an initial liability claim for benefits
> as provided by subsection (1), and then is ordered to pay such benefits
> by an administrative judge pursuant to a conference held under [G. L.
> c. 152, § 10A], said insurer shall pay an attorney's fee to the employee's
> counsel in the amount of one thousand dollars, plus necessary expenses;
> provided, however, that an administrative judge may increase or decrease
> such fee based on the complexity of the dispute or the effort expended
> by the attorney; provided, further, that only one such fee under this
> paragraph shall be paid with respect to any such written claim."

"constrained to conclude" that Sellers was "not entitled to have his average weekly wages calculated by combining his concurrent wages earned from both the uninsured employer and the insured employer." *Sellers's Case*, 71 Mass. App. Ct. 75, 76 (2008). We granted Sellers's application for further appellate review. We now affirm the decision of the board.[13]

2. *Discussion.* Because "the primary goal of the act is wage replacement," *McDonough's Case*, 448 Mass. 79, 83 (2006), an employee permanently and totally disabled in the course of employment is eligible for weekly compensation benefits based on the employee's "average weekly wage" before the injury. G. L. c. 152, § 34A. "Average weekly wages," in turn, are defined in G. L. c. 152, § 1 (1), which states, in part, that "[i]n case the injured employee is employed in the concurrent service of more than one *insured* employer or self-insurer, his total earnings from the several insured employers and self-insurers shall be considered in determining his average weekly wages" (emphasis added).[14]

The trust fund argues that the plain meaning of the statutory

---

[13]The board reasoned that the term "insured employer," as used in G. L. c. 152, § 1 (1), applies not only to an employer who actually obtains insurance under the act, but also to an "employer legally required to carry workers' compensation insurance." Our reasoning is somewhat different from that of the board.

[14]Since its enactment in 1911 (St. 1911, c. 751, Part V), G. L. c. 152, § 1 (1), has been amended from time to time. It now provides:

" 'Average weekly wages', the earnings of the injured employee during the period of twelve calendar months immediately preceding the date of injury, divided by fifty-two; but if the injured employee lost more than two weeks' time during such period, the earnings for the remainder of such twelve calendar months shall be divided by the number of weeks remaining after the time so lost has been deducted. Where, by reason of the shortness of the time during which the employee has been in the employment of his employer or the nature or terms of the employment, it is impracticable to compute the average weekly wages, as above defined, regard may be had to the average weekly amount which, during the twelve months previous to the injury, was being earned by a person in the same grade employed at the same work by the same employer, or, if there is no person so employed, by a person in the same grade employed in the same class of employment and in the same district. In case the injured employee is employed in the concurrent service of more than one insured employer or self-insurer, his total earnings from the several insured employers and self-

definition of "average weekly wages" precludes Sellers from receiving workers' compensation payments based on his concurrent earnings from both Miller and Havlin. Sellers responds that where, as here, the statutory language does not address the precise issue presented, the definitional section must be interpreted in the context of the purposes of the act and the workers' compensation insurance scheme as a whole. We agree. Precluding an injured employee such as Sellers from receiving wage replacement benefits calculated on the basis of his concurrent employment because one of his employers failed to obtain workers' compensation insurance would be contrary to the purposes of the act, is not compelled by the statutory language, and would be inconsistent with the mandate of the definitional section of the act to consider the issue presented in context.

The concurrent employment provision of G. L. c. 152, § 1 (1), on which the trust fund relies, was added to the definition of "average weekly wages" in 1935. St. 1935, c. 332, § 1. Prior to 1935, an injured employee who had more than one concurrent employer was usually awarded workers' compensation benefits based solely on wages paid by the employer in whose employ the employee was working when injured. See *Nelson's Case*, 333 Mass. 401, 402-403 (1956) (citing cases prior to 1935 in which rate of compensation was based only on wages where employee was injured). But see *Gillen's Case*, 215 Mass. 96 (1913) (awarding compensation based on wages from all employers where longshoreman worked for many employers during course of day or week). Then in 1935, the Governor, in an address to the Legislature, proposed that the existing workers' compensation scheme be "liberalized and strengthened."

insurers shall be considered in determining his average weekly wages. Weeks in which the employee received less than five dollars in wages shall be considered time lost and shall be excluded in determining the average weekly wages; provided, however, that this exclusion shall not apply to employees whose normal working hours in the service of the employer are less than fifteen hours each week.

"Except as provided by [G. L. c. 149, §§ 26 and 27], such fringe benefits as health insurance plans, pensions, day care, or education and training programs provided by employers shall not be included in employee earnings for the purpose of calculating average weekly wages under this section."

1935 Senate Doc. No. 1, at 14. He requested, among other things, that the Legislature define the term "average weekly wage" "more equitably" for the "protection of workers suffering serious injury in the discharge of their duties," noting that injured workers too frequently received a "paltry sum." *Id.* at 15. Within months, the Legislature had amended the definition of "average weekly wages" to include a provision for the calculation of wages in cases of concurrent employment, the provision at issue here. St. 1935, c. 332, § 1. Our task is to determine whether that amendment limits the calculation of average weekly wage benefits to only those employees who are employed concurrently by two or more *insured* employers, excluding all employees engaged in the concurrent service of one or more uninsured employers. We do so employing familiar canons of statutory construction.

Where, as here, a statute is "simply silent" on a particular issue, we interpret the provision "in the context of the over-all objective the Legislature sought to accomplish." *National Lumber Co.* v. *LeFrancois Constr. Corp.*, 430 Mass. 663, 667 (2000). See *Perry* v. *Commonwealth*, 438 Mass. 282, 288 (2002) (changes to statutory scheme "must be interpreted in context"). That context is not in doubt. As this court has long recognized:

> "The Act was enacted as a 'humanitarian measure' in response to strong public sentiment that the remedies afforded by actions of tort at common law did not provide adequate protection to workers. . . . It is a remedial statute and should be given a broad interpretation, viewed in light of its purpose and to 'promote the accomplishment of its beneficent design.' " (Citations omitted.)

*Neff* v. *Commissioner of the Dep't of Indus. Accs.*, 421 Mass. 70, 73 (1995), quoting *Young* v. *Duncan*, 218 Mass. 346, 349 (1914). See *CNA Ins. Cos.* v. *Sliski*, 433 Mass. 491, 493 (2001) (same).

As noted earlier, the "beneficent design" that the workers' compensation scheme seeks to accomplish is "wage replacement" for injured employees, *McDonough's Case, supra* at 83, which is to be calculated on the basis of the injured employee's earning capacity. See *Gunderson's Case*, 423 Mass. 642,

644 (1996), quoting 2 A. Larson, Workmen's Compensation § 60.11(f), at 10-647 to 10-648 (1996) ("The entire objective of wage calculation is to arrive at a fair approximation of claimant's probable future earning capacity"); *Gillen's Case, supra* at 99 ("The loss of [the employee's] capacity to earn, as demonstrated by his conduct in such regular employment, is the basis upon which his compensation should be based"). We consider the application of the 1935 revisions to the definition of "average weekly wages" to Sellers' case against that background, recognizing that the 1935 amendment to the act, as all other such changes, "should be broadly construed to enlarge the rights of employees and liberalize its interpretation." L.Y. Nason, C.W. Koziol, & R.A. Wall, Workers' Compensation § 2. 12, at 48 (3d ed. 2003) (Nason, Koziol, & Wall).

The purpose of the 1935 amendment to G. L. c. 152, § 1 (1), is "plain." *Nelson's Case, supra* at 403. As this court noted, after 1935, an injured employee's compensation "was to be no longer computed only upon the rate of wages that he was receiving from the particular contract of employment in which he was actually engaged at the time of his injury." *Id.* Concerning the Legislature's reference to "insured" concurrent employers, it is obvious why the Legislature selected that term when it amended the statute in 1935. At the time, the workers' compensation scheme differed in two significant and relevant respects from the workers' compensation system now in place. First, in 1935 employer participation in the workers' compensation system was voluntary. See Nason, Koziol, & Wall, *supra* at § 2.3, at 20. Participation remained elective until 1943, when it became mandatory. *Id.* Second, in 1935 there had not yet been established a fund or other source of money to pay workers' compensation benefits for employees injured while working for employers who elected not to purchase insurance. See *id.* at § 7.4, at 133. It was not until 1985 that the Legislature established a fund to pay workers' compensation benefits for employees injured while in the employ of uninsured employers. See note 2, *supra*. Thus in 1935, when the act was amended to provide for concurrent wages as the basis for calculating an injured employee's average weekly wages, the only employers within the "common system" of Massachusetts workers' compensation, *Letteney's*

*Case*, 429 Mass. 280, 286 (1999), were those who voluntarily were "insured." St. 1935, c. 332, § 1. Employers who were not insured did not participate in and were not part of the system. There was, therefore, no need for the Legislature to advert to the calculation of average weekly wages by uninsured employers. See *Letteney's Case, supra* at 284 ("The Legislature need not, and indeed cannot, anticipate every circumstance that may arise under a general principle it enacts").

Since 1935, the Legislature has amended the act to mandate that nearly all employers carry workers' compensation insurance or qualify as self-insurers.[15] See, e.g., St. 1943, c. 529, § 1; St. 1971, c. 811. It also has established the trust fund to pay for, inter alia, benefits for an employee injured while working for an employer who is not insured in contravention of the act. See note 2, *supra*. Thus, unlike in 1935, today all Massachusetts employers subject to the act participate in the "common system" of workers' compensation. *Letteney's Case, supra* at 286. The trust fund notes correctly that while the act has been amended in these respects, the Legislature has not amended the concurrent employment provision of G. L. c. 152, § 1 (1). This, the trust fund concludes, reflects the "manifest intention" of the Legislature to limit the scope of the definition of concurrent wages to insured employers only. We disagree.

One of the purposes of establishing the trust fund "was to give employees of uninsured employers the *same* rights, benefits, and duties under the workers' compensation act as employees of insuring employers" (emphasis added). Nason, Koziol, & Wall, *supra* at § 7.4, at 133. See 452 Code Mass. Regs. § 3.04 (1997) ("An employee of any uninsured employer shall be entitled, without election and through the [trust fund], to the weekly compensation and other medical and vocational rehabilitation benefits provided under [G. L.] c. 152"). Those "rights" and "benefits" include providing an injured employee with a monetary award that reflects the earning capacity of which the work-related injury deprived him. See *Gunderson's Case*, 423

---

[15]The act remains elective for employers of seasonal or casual employees or part-time domestic servants, and for nonprofit entities that are exclusively staffed by volunteers. See L.Y. Nason, C.W. Koziol, & R.A. Wall, Workers' Compensation § 7.1, at 127 (3d ed. 2003).

Mass. 642, 644-645 (1996), and cases and authorities cited; 5 A. Larson & L.K. Larson, Workers' Compensation § 93.03[2] (2008) (purpose of act "is to estimate accurately the claimant's earning capacity and provide compensation bearing a proper relation to it"). The trust fund's reasoning relies on "the maxim expressio unius est exclusio alterius, which is at most only a fallible aid to decision," would "lead to an awkward and even intolerable result, and is therefore abandoned for a more liberal or more encompassing approach." *Mailhot* v. *Travelers Ins. Co.*, 375 Mass. 342, 348 & n.6 (1978), citing Llewellyn, Remarks on the Theory of Appellate Decision and the Rules or Canons About How Statutes Are to Be Construed, 3 Vand. L. Rev. 395, 405 (1950). That maxim "is not to be followed where to do so would frustrate the general beneficial purposes of the legislation." *Harborview Residents' Comm., Inc.* v. *Quincy Hous. Auth.*, 368 Mass. 425, 432 (1975) (discussing G. L. c. 121B, § 32). Cf. *McCarty's Case*, 445 Mass. 361, 376 (2005) (Sosman, J., concurring) ("one searches in vain for any reason why the Legislature would have so distorted the workers' compensation system merely because the injured worker was injured on a public construction project as opposed to some other type of job").

When faced with an analogous situation, this court has reached a result similar to the one we reach today. In *Van Bibber's Case*, 343 Mass. 443 (1962), the court interpreted a provision in G. L. c. 152, § 18, which limited the liability of workers' compensation insurers to injuries taking place in or about the contractor's "premises" when the insured employer had sub-contracted its work.[16] General Laws c. 152, § 18, as amended by St. 1938, c. 102, provided, "The word 'premises,' as used in

---

[16]General Laws c. 152, § 18, provides, in pertinent part:

"If an insured person enters into a contract, written or oral, with an independent contractor to do such person's work, or if such a contractor enters into a contract with a sub-contractor to do all or any part of the work comprised in such contract with the insured, and the insurer would, if such work were executed by employees immediately employed by the insured, be liable to pay compensation under this chapter to those employees, the insurer shall pay to such employees any compensation which would be payable to them under this chapter if the independent or sub-contractors were insured persons. . . . *This section shall not apply . . . to any case where the injury occurred elsewhere than on, in or about the premises on which the contractor has undertaken to execute*

this section, shall include the public highways if the contract requires or necessitates the use of the public highways." *Van Bibber's Case, supra* at 449-450. The employee, who was employed to haul fill from a gravel pit, was injured on a road that provided the only access to the pit, and the evidence did not establish that the road was a "public highway." *Id.* at 450. This court, holding that the 1938 amendment "should be construed to effectuate its purpose which plainly was to enlarge rather than to restrict the meaning of the word 'premises,' and thus broaden the protection afforded to workmen under the act," concluded that benefits should not be conditioned on whether the road was a "public highway." *Id.* at 450-451. The 1935 amendment at issue in this case was similarly plainly enacted to enlarge rather than to restrict the meaning of "average weekly wages" and should not be used to restrict benefits to employees who are grievously injured while in the employ of employers who are illegally uninsured.

Our conclusion is also consistent with the definitional instructions of the act. General Laws c. 152, § 1 (1), states, at the outset, that "[t]he following words as used in this chapter shall, *unless a different meaning is plainly required by the context* or specifically prescribed, have the following meanings" (emphasis added). The context of the establishment of the trust fund and the mandating of workers' compensation insurance for nearly all employers after 1935 requires the trust fund to pay Sellers workers' compensation benefits calculated on his average weekly wages from both of his employers, uninsured and insured.[17]

---

*the work for the insured* or which are under the control or management of the insured. *The word 'premises,' as used in this section, shall include the public highways if the contract requires or necessitates the use of the public highways."* (Emphases added.)

[17]Our conclusion is consistent with the view espoused by the leading treatise on the Massachusetts workers' compensation scheme. See L.Y. Nason, C.W. Koziol, & R.A. Wall, Workers' Compensation § 18.4, at 23 n.4 (3d ed. 2003) ("To exclude from the definition of concurrent employment all . . . domestic employers who fail to insure would be depriving those employees of the benefits plainly intended by the [1935] amendment. Since the insurer who is obligated by the amendment to pay compensation based on the aggregate wage in concurrent employment receives no contribution under the statute from the insurer of the other employer, there seems no reason to limit the

3. *Conclusion.* For the foregoing reasons, the decision of the board is affirmed.

*So ordered.*

---

construction of the amendment to employers insured under the Massachusetts act. The legislative intent was merely to limit relief to those employed by firms of sufficient size and stability to come within a compensation act'').